# IN THE COURT OF APPEALS OF IOWA

No. 14-1360
Filed August 19, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**OLIN DEAN YOUNGS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Paul R. Huscher,

Judge.


        The defendant appeals convictions for the offenses of conspiracy to

manufacture methamphetamine and possession of a precursor.  **AFFIRMED.**


        Jeffrey M. Lipman of Lipman Law Firm, P.C., Clive, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Jean C. Pettinger,

Assistant Attorneys General, John Criswell, County Attorney, and Douglas A.

Eichholz, Assistant County Attorney, for appellee.


        Considered by Tabor, P.J., McDonald, J., and Eisenhauer, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

Olin Dean Youngs appeals his convictions for the offenses of conspiracy to manufacture methamphetamine, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.413 (2013), and possession of a precursor, in violation of Iowa Code section 124.401(4)(b). Youngs contends there was insufficient evidence to support his convictions. He also contends he received ineffective assistance of counsel when his trial counsel failed to object to testimony regarding his prior convictions.

I.

On April 16, 2013, Youngs and Stacie Johnston went to two different Walgreens stores in Des Moines and purchased several cold packs containing ammonium nitrate, an ingredient used in the manufacture of methamphetamine. A Walgreens employee that had previously worked with drug task force officers reported the purchases to law enforcement.

Based on information received from the employee, two officers of the Mid-Iowa Narcotics Enforcement Task Force began following the Ford Taurus Youngs and Johnston were driving. Youngs and Johnston drove to another Walgreens where Youngs purchased more cold packs. He and Johnston drove to a Menard's store in Altoona where each purchased lye drain cleaner, another ingredient used in the manufacture of methamphetamine. The officers followed the vehicle to Prairie City, where Youngs and Johnston changed vehicles to a green Ford Ranger. Johnston's mother began driving the Taurus. The two vehicles headed toward Indianola.

The officers alerted the Indianola Police Department of the investigation, and the Indianola police initiated a traffic stop of the Taurus. During the traffic stop, the police discovered a syringe containing methamphetamine in the vehicle. Johnston's mother called Johnston and asked her and Youngs to pick her up, but Youngs and Johnston began driving away from the area where the traffic stop had taken place. Officers then stopped the Ranger driven by Youngs. When officers questioned Youngs and Johnston about the methamphetamine found in the Taurus, Johnston admitted ownership of it. Youngs told the officers the sixteen cold packs he had purchased were for an injury to his wrist but failed to provide an explanation as to why he purchased the cold packs from three different stores. Youngs also claimed he purchased the lye drain cleaner for his father. During questioning, Youngs appeared to become increasingly fidgety and was unable to provide clear answers. A search of the Ranger led to the discovery of sixteen cold packs; brass valves with blue discoloration, indicating possible exposure to anhydrous ammonia; tubing; containers of starting fluid; unopened bottles of HEET; funnels; two containers of Kleen-Out lye drain cleaner; a flashlight containing two lithium batteries; shop towels; a can of WD-40; plastic bottles converted into funnels; a box containing two syringes; a blister pack containing one pseudoephedrine pill; an empty bottle of Mountain Dew; and a can of table salt. Many of these items are used in the manufacture of methamphetamine.

The State charged Youngs with one count of conspiracy to manufacture methamphetamine, three counts of possession of a precursor, and one count of

possession of methamphetamine, first offense. The State later dismissed the possession charge. A jury trial was held. At the close of the State's evidence, the court granted Youngs's motion for judgment of acquittal on two counts of possession of a precursor. The jury found Youngs guilty of the two remaining charges. The trial court sentenced Youngs to an indeterminate term of incarceration not to exceed ten years on the conspiracy-to-manufacture-methamphetamine conviction and five years on the possession-of-a-precursor conviction. The sentences were ordered to run concurrently. Youngs filed a timely notice of appeal.

II.

Youngs contends there is insufficient evidence to support his convictions. We review this claim for correction of errors at law. *See State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). A finding of guilt is binding upon us if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a). Substantial evidence is that from which a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt. *See Thomas*, 561 N.W.2d at 39. In determining whether substantial evidence supports the verdict, we view the evidence, including all reasonable inferences that may be made from it, in the light most favorable to the verdict. *See State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995).

A.

With respect to conspiracy to manufacture methamphetamine, the jury was instructed the State needed to prove the following beyond a reasonable doubt:

     1. On or about the 16th day of April, 2013, the defendant agreed with another person or persons
          a. That one or more of them would commit the offense of manufacturing methamphetamine; or
          b. That one or more of them would attempt to commit the offense of manufacturing methamphetamine.
     2. The defendant entered into the agreement with the intent to promote or facilitate the offense of manufacturing of methamphetamine.
     3. The defendant, or an alleged co-conspirator, committed an overt act.
     4. That any alleged co-conspirator was not a law enforcement agent investigating the offense of manufacturing methamphetamine, or assisting law enforcement agents in the investigation when the conspiracy began.

Youngs contends the State failed to prove the first and second elements.

We conclude, when viewed in the light most favorable to the verdict, substantial evidence supports the finding that Youngs entered into a conspiracy to manufacture methamphetamine. Youngs and Johnston entered three different stores and purchased cold packs together. They went to another store and separately purchased lye drain cleaner. These ingredients are used in the manufacture of methamphetamine. Furthermore, the vehicle they were traveling in together had equipment and ingredients necessary for the manufacture of methamphetamine at the time it was stopped. It appears their activity was coordinated and in concert. Youngs and Johnston also engaged with Johnston's mother to drive the second vehicle, further evidencing agreement between Johnston and Youngs. While Youngs argues there is no direct evidence of a conspiracy, the nature of conspiracies does not lend itself to direct evidence of the agreement to form a conspiracy. *See State v. Kern*, 831 N.W.2d 149, 159 (Iowa 2013). Circumstantial evidence and the inferences drawn from the

circumstances are sufficient to support a conspiracy charge. *See id.* Viewing the forgoing evidence and the inferences that can be drawn from it in the light most favorable to the verdict, there is sufficient evidence by which a rational trier of fact could find Youngs guilty beyond a reasonable doubt.

Likewise, there is substantial evidence in the record to support the finding Young or Johnston intended to manufacture methamphetamine. Youngs attempts to distinguish the facts of this case from those in *State v. Ronnfeldt*, No. 02-1666, 2003 WL 22016867, at *2 (Iowa Ct. App. Aug. 27, 2003), where this court found sufficient evidence of the defendant's intent to manufacture methamphetamine when the defendant attempted to evade capture and the items in his vehicle had already been prepared for the manufacture of methamphetamine. Youngs concedes the items in his vehicle could be used in the manufacture of methamphetamine but argues that unlike *Ronnfeldt*, he did not attempt to flee from police and none of the items in his vehicle had been prepared for manufacturing methamphetamine. While evidence of an attempt to evade law enforcement and evidence of preparation may be sufficient to support a finding of intent to manufacture methamphetamine, such evidence is not necessary to support such a finding. There is sufficient evidence to allow a reasonable factfinder to find Youngs or Johnston had the specific intent to manufacture methamphetamine. *See, e.g., State v. Stephen*, No. 10-0286, 2011 WL 5393453, at *7 (Iowa Ct. App. Nov. 9, 2011) (affirming conviction where the defendant was a passenger in vehicle containing "many of the ingredients

necessary to manufacture methamphetamine" and other evidence showed concerted action).

B.

With respect to possession of a precursor, the jury was instructed the State was required to prove the following beyond a reasonable doubt:

> 1. On or about the 16th day of April, 2013, the defendant possessed pseudoephedrine.
> 2. The defendant knew that the substance was pseudoephedrine.
> 3. That the defendant possessed the pseudoephedrine with the specific intent that it would be used as a precursor for the manufacture of methamphetamine.

Youngs argues the State failed to prove that he had the specific intent to use pseudoephedrine as a precursor to manufacture methamphetamine.

Substantial evidence shows Youngs possessed the pseudoephedrine with the intent to use it as a precursor for the manufacture of methamphetamine. Youngs purchased sixteen cold packs and other items that can be used in the manufacture of methamphetamine on the day he was arrested. He made these purchases at a number of stores in Des Moines and the surrounding area. When stopped by law enforcement, his vehicle contained a number of items used in the manufacture of methamphetamine. A rational factfinder could reasonably infer the pseudoephedrine in Youngs's possession was intended to be used as a precursor in the manufacture of methamphetamine.

III.

Youngs also contends he received ineffective assistance of trial counsel. We review this claim de novo. *See State v. Ray*, 516 N.W.2d 863, 865 (Iowa

1994). To establish a claim of ineffective assistance of counsel, Youngs must prove that (1) trial counsel failed to perform an essential duty and (2) that this failure resulted in prejudice. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Although ineffective-assistance claims are generally preserved for postconviction relief proceedings to allow counsel to explain his or her action, we will address an ineffective-assistance claim on direct appeal where, as here, the record is adequate. *See Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980).

Youngs contends he received ineffective assistance of counsel when counsel failed to object during the following testimony by a State witness:

> Q. Through the course of your career, have you seen people leave their home area and travel a distance in order to purchase the components to make methamphetamine out of their home base? A. Yes.
> Q. Is that common knowledge that that occurs? A. Yes.
> Q. Why do they do that? A. If they go to another area, nobody knows who they are, so you can just kind of fly under the radar. If you do it where you're known, well known, people start asking questions or tipping off law enforcement, *especially if someone has been previously convicted of—of, like in this case, say, manufacturing or a drug charge*. If somebody knows that you're a drug user or you manufacture, and you're buying this stuff in town, people know it. People start talking, so they will go outside the community to make those purchases.

(Emphasis added.) Youngs argues this testimony improperly disclosed his prior convictions. While such evidence is usually inadmissible except to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *see* Iowa R. Evid. 5.404(b), it is explicitly inadmissible to show a defendant's criminal disposition or the likelihood that he would commit the crime charged. *State v. Cox*, 781 N.W.2d 757, 760 (Iowa 2010).

Although counsel's failure to object could be attributable to trial strategy, there is no need to determine whether counsel breached an essential duty in failing to object to the testimony because Youngs is unable to show he was prejudiced by this failure. *See Ledzema v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently."). Youngs's reliance on *State v. Sullivan*, 679 N.W.2d 19 (Iowa 2004), is misplaced. In that case, the court resolved the defendant's claim using a harmless error analysis under rule 5.103, in which prejudice is presumed in the absence of evidence to the contrary. *See Sullivan*, 679 N.W.2d at 30. In contrast, the defendant bears the burden of establishing *Strickland* prejudice to prevail on his ineffective-assistance claim. Given the overwhelming evidence of Youngs's guilt, he is unable to show that the result of the proceedings would have been different if trial counsel objected to the brief mention of a prior drug conviction. *See State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008). Accordingly, his ineffective-assistance-of-counsel claim fails.

IV.

For the foregoing reasons, we affirm the defendant's convictions and sentences.

**AFFIRMED.**