# IN THE COURT OF APPEALS OF IOWA

No. 15-0309
Filed April 27, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH ROBERT JOYCE JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

        Defendant appeals his convictions for first-degree burglary and domestic abuse assault by strangulation causing bodily injury. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., Doyle, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODUE, Senior Judge.**

Joseph Robert Joyce Jr. was convicted by jury trial of burglary in the first degree and domestic abuse assault by strangulation causing bodily injury.

## I. Factual Background

On March 4, 2013, an altercation between Joyce and Kiya Ferguson took place in the residence Ferguson was occupying. Both testified they had been residing together and believed that Ferguson was pregnant with Joyce's child. They had separated in December as the result of a no-contact order. When Joyce arrived at Ferguson's apartment is a matter of dispute. Ferguson testified that she had arrived at the apartment a little after noon on the date of the incident, and Joyce had knocked at the door soon thereafter and basically forced his way in. Joyce testified he had stayed the night before and had remained there until Ferguson came home the next afternoon.

As soon as they were both present at the apartment, an argument took place. She accused him of cheating on her, and he accused her of drinking too much while pregnant with his child. She testified she was thrown to the floor and choked to the point of unconsciousness on two different occasions during the altercation. At one point, she attempted to leave to get help, but he pursued her and dragged her back into the apartment. At another point, he grabbed her and was attempting to force her into her bedroom, and she tripped. She put her hand out to protect herself and went through the window, causing a laceration on the palm of her hand. She attempted to call 911, but Joyce took the cell phone away and threw it where Ferguson was unable to reach it. Joyce finally left the apartment, and Ferguson retrieved her cell phone, called the police, and followed

him so she could tell officers where he had gone. At trial, Ferguson gave a detailed account of the physical altercation.

Jennifer Brown, who lived in the same apartment building as Ferguson, heard noises in Ferguson's apartment that sounded like wrestling, things being thrown around, and yelling and screaming. She could hear a man's voice and a woman's voice pleading "stop." She had called 911 prior to the call that Ferguson was able to complete.

Joyce testified that he had been invited to the apartment the day before and spent the afternoon with Ferguson. Ferguson left in the evening with two of her girlfriends to drink and play cards. She did not come back until 1:00 p.m. the following day, when an argument developed. He decided to leave the residence, but Ferguson charged him and took a swing at him. He ducked, and she struck the window, breaking it and cutting her hand. Joyce took her to the bedroom to cleanse and dress the wound. She was crying at the time and yelled at him to stop. Joyce asserts that it was those cries and pleadings Brown heard.

The police and paramedics arrived. Ferguson was taken to the hospital and examined by a doctor. The doctor observed contusions on multiple sites, an injury to the back of her head, and a hand abrasion, and opined that she was a victim of physical assault. Ferguson was confused and disoriented. She had a blood alcohol level of .087 when tested three and one-half hours after the incident, but the examining physician determined that the disorientation was a result of her head injury and the resulting concussion.

A trial information was filed charging Joyce with domestic abuse assault by strangulation causing bodily injury and first-degree burglary with intentional or

reckless infliction of bodily injury. Joyce was convicted of both charges. Joyce's counsel moved for a judgment of acquittal at the close of the State's evidence and made a motion for new trial, but both motions were overruled.

Joyce's appeal is entirely based on a claim of ineffective assistance of counsel. The claim is predicated on counsel's failure in the following respects: (a) failing to raise the lack of the "family or household members residing together" element as required to support a domestic-abuse-assault charge in either the motion for judgment of acquittal or motion for new trial, (b) failing to request an additional instruction defining "family or household member," (c) failing to object to the marshalling instruction on the burglary charge that did not contain a justification or self-defense element, (d) recklessly eliciting testimony characterizing Joyce as a drug dealer, and (e) failing to object to the prosecutor's comments in his rebuttal argument on Joyce's silence after submitting to the authorities.

Joyce also requested all the claims be added together and accumulated when determining whether or not the prejudice prong of his claim of ineffective assistance of counsel had been met.

## II. Preservation of Error

Joyce's appeal is based on an ineffective-assistance-of-counsel claim. Ineffective assistance of counsel is an exception to the general preservation-of-error requirement. *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

### III. Scope of Review

Claims of ineffective assistance of counsel raise constitutional issues and as such, the review is de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

### IV. Discussion

To prevail on a claim of ineffective assistance of counsel the claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Choices of strategy after proper investigation are virtually unchallengeable. *Ledezma*, 626 N.W.2d at 143. For relief to be granted, there must be a determination that, but for ineffective assistance, there is a reasonable probability the result would have been different. *Id.* at 145.

Counsel is not ineffective for failing to make a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). Ordinarily, claims of ineffective assistance of counsel are preserved for a postconviction-relief proceeding, but we will resolve them on direct appeal when the record is adequate. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Claims of ineffective assistance do not accumulate when there is a breach of duty, but when there is more than one

breach of duty, they may be considered cumulative to determine prejudice. *Id.* at 501-02.

**A.** Judgment of Acquittal

Counsel did not raise the State's alleged failure to establish the "family or household members residing together within the last year" element of domestic abuse assault in the motion for acquittal. The State's burden is met if a rational finder of fact based on the evidence in the record could find that the elements of the crime have been established beyond a reasonable doubt. *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002).

Ferguson had testified she and Joyce had resided together within the year prior to the incident and, specifically, had resided together until the previous December. Ferguson was the tenant on the lease but Joyce also received mail at that address, shared household tasks, kept some of his belongings there, and had an intimate and sexual relationship with Ferguson. Joyce did not have keys to the apartment but borrowed Ferguson's keys frequently. A stay-away order had been entered between the parties within the previous three months. Merely living in the same apartment does not meet the criteria of the statute. *State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996). The testimony of Ferguson established a relationship appreciably more extensive than mere roommates. To have contended otherwise in the motion for judgment of acquittal would have been meritless.

**B.** Motion for New Trial and Omitted Instruction

In ruling on a motion for new trial, the court is required to consider the weight of the evidence, which is a much broader standard than a sufficiency-of-

the-evidence standard, and it involves questions of credibility. *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008). It is only in extraordinary cases, where the evidence preponderates against the verdict, that a jury verdict should be disturbed by the courts. *Id.*

Even without it being raised, the court would have been cognizant of the relationship requirement. Joyce's testimony bolstered and strengthened the relationship between the parties as testified to by Ferguson. He thought Ferguson was pregnant with his child and referred to the parties as "Mother Baby" and "Father Baby." Joyce never denied that he had a significant relationship with Ferguson. Joyce admitted he and Ferguson had lived and resided together. Joyce testified that at the time of the incident they had what he termed an "open relationship" but would not say it was an "open relationship" when they were living together. "If she was doing something that wasn't up close I wouldn't know nothing about it." If counsel had raised the relationship issue in the motion for new trial, it would have been denied.

Joyce claims in any event, the instructions should have included an instruction defining "family or household member," but counsel made no such request and, therefore, failed in his duty to do so. When there is no factual contention as to a particular legal issue, it is not ineffective assistance for counsel to fail to request an instruction be included. *State v. Blackford*, 335 N.W.2d 173, 178 (Iowa 1983). *Blackford* has been followed in *State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990).

**C.** Failure to Object to the Absence of Justification in the Burglary Marshalling Instruction

Joyce also claims the marshalling instruction on burglary should have included an element requiring the State to prove he acted without justification. Self-defense was the essence of his defense. Self-defense is a justification for an assault. The element required to establish guilt under the alternative form of burglary used in this case is not an assault but rather "an intent to commit an assault." To the extent an assault needed to be set out, the definition of assault and justification by self-defense were clearly set out in the instructions. Counsel has no duty to request justification as a part of the marshalling instruction of burglary in the alternative under which Joyce was charged.

**D.** Testimony Indicating Joyce was a Drug Dealer

During cross-examination, defense counsel asked Ferguson about assistance that Joyce may have received in getting his car unstuck from the snow a day or two before the incident in question. Ferguson had replied it was not Joyce but a girl with him that helped. Counsel asked if she knew who the girl was, and Ferguson replied "[J]ust a lady he served to." Counsel asked, "[W]hat does that mean?" And Ferguson replied, "[L]ike he sells drugs so that's just a lady that he served to."

"The admission of evidence of cocaine delivery and distribution is inherently prejudicial." *State v. Liggins*, 524 N.W.2d 181, 188 (Iowa 1994). Joyce contends defense counsel should have known what the answer would be. The State primarily argues counsel had no reason to anticipate the answer given and, more importantly, that the statement without further enhancement is not

prejudicial. The record is not adequate to determine what counsel knew or should have known about the likely response to the question asked. If under the facts counsel violated a duty, the prejudicial impact and any cumulative effect it might have should be left to be evaluated in a postconviction hearing.

**E.** After the Warrant for Joyce's Arrest was Issued He Turned Himself In

On cross-examination the following exchange took place between the prosecution and Joyce:

> Q. You were asked if the police department ever tried to get your side of the story. A. Yes, sir.
> Q. And you were saying they did not? A. No they did not. At the point when I turned myself in there wasn't no way for me to offer.
> Q. You couldn't have just said, hey, let me tell you what happened? A. No.

In his rebuttal argument the prosecutor stated the following: "Don't forget the defendant has had seventeen months to think about his story. He's never provided an explanation to law enforcement before. Never made a statement before." Defense counsel lodged no objection.

Comments by a prosecutor on a defendant's silence after receiving a *Miranda* warning violate the Due Process Clause of the Fourteenth Amendment. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). Such comments are not a violation of due process if voluntary statements are made prior to a *Miranda* warning. *Fletcher v. Weir*, 455 U.S. 603, 605-06 (1982). Further, in *Doyle* the court specifically noted the State did not contend that the comment was "harmless error." *Doyle*, 426 U.S. at 619-20. The concept of "harmless error" is substantially equivalent with the prejudice prong in an ineffective-assistance-of-

counsel claim. The record does not indicate whether or when Joyce was given a *Miranda* warning and whether any time existed for him to tell his story before the *Miranda* warning was given.

This issue, as well as the issue regarding the testimony indicating Joyce was a drug dealer, are left to be considered in a postconviction relief action. We affirm Joyce's convictions.

**AFFIRMED.**