# IN THE SUPREME COURT OF IOWA

No. 105 / 06-0228

Filed January 4, 2008

**STATE OF IOWA,**

Appellee,

vs.

**GREGORY EUGENE MAXWELL,**

Appellant.

_____

Appeal from the Iowa District Court for Polk County, Don C. Nickerson (trial) and Robert A. Hutchison (sentencing), Judges.

Gregory Eugene Maxwell appeals his conviction and sentence for possession of a controlled substance in violation of Iowa Code section 124.401(5). **AFFIRMED.**

Mark C. Smith, State Appellate Defender, Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John P. Sarcone, County Attorney, and Celene Gogerty, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

George Eugene Maxwell appeals the district court's use of the same two prior felony convictions to classify his crime as a felony under Iowa Code section 124.401(5) (2005) and to sentence him as a habitual offender under section 902.8. Maxwell also claims the district court erred when it denied his motion for new trial without giving any reasons for its denial. Finally, Maxwell requests this court find his trial counsel provided ineffective assistance when he failed to object to an aiding and abetting jury instruction, which the evidence did not support. Because we find the district court did not err by classifying his crime as a felony and sentencing him as a habitual felon based on the same two prior felony convictions, the district court correctly decided Maxwell's motion for new trial, and his counsel did not provide ineffective assistance, we affirm his conviction and sentence.

## I. Background Facts and Proceedings.

On March 19, 2005, police officer Brian Meskimen observed George Eugene Maxwell drive out of a convenience store parking lot onto Aurora Avenue in Urbandale. Officer Meskimen noticed Maxwell was not wearing his seatbelt. Meskimen followed Maxwell on Aurora. Not wanting to pull Maxwell over on the busy one-lane street, Meskimen waited to activate his top lights until Maxwell turned down a side street. After Meskimen turned on his top lights, Maxwell proceeded down the side street for about one-hundred feet before turning into the driveway of his home. Maxwell stopped the vehicle in the driveway, got out, and started walking toward his home.

By the time Meskimen asked Maxwell to return to his vehicle, Maxwell had reached the front stoop of his house. Maxwell complied with

Meskimen's request and returned to the vehicle, a silver 1983 Oldsmobile Delta.

As Meskimen was advising Maxwell why he stopped him, Meskimen noticed the smell of marijuana on Maxwell. Meskimen also saw a pack of Newport cigarettes sitting in plain view between the two front seats of the vehicle. The front seats in Maxwell's Oldsmobile were larger seats, more similar to bench seats than bucket seats, with a slit and an armrest to separate them.

The cigarette pack was open, and Meskimen could see a plastic baggie protruding from the pack. Meskimen testified in his five years of experience as a police officer, he knew narcotics were often transported in empty cigarette packs, so he read Maxwell his *Miranda* rights and asked him for his driver's license.

Meskimen placed Maxwell in the back of his squad car, and out of safety concerns, asked for Maxwell's consent to search his person. Meskimen found nothing on Maxwell other than a full pack of Newport cigarettes.

Meskimen then asked Maxwell if he would consent to a search of the vehicle. Maxwell told Meskimen he was borrowing the car and was not sure what all was in the Oldsmobile, but that Meskimen could search it. Meskimen waited for officer Matthew McCarty to arrive on the scene before searching the vehicle. Officer McCarty arrived and watched Maxwell in the back of the patrol car while Meskimen searched the Oldsmobile. McCarty did not participate in the search or the collection of evidence.

Meskimen removed the plastic baggie protruding from the pack of cigarettes found in the car. The baggie contained approximately ten rocks of a white-yellowish substance. Meskimen thought the baggie contained

crack cocaine, so he took the cigarette pack and the baggie as evidence. No drug stamp was affixed to the substance or baggie. He continued to search the entire vehicle, but did not seize any other items.

The substance was transported to the department of criminal investigation's laboratory. The DCI lab concluded the ten rocks were 2.77 net grams of cocaine base.

The State charged Maxwell in two counts. In count one the State charged Maxwell with possession of a controlled substance with intent to deliver, a class "C" felony, in violation of Iowa Code section 124.401(1)(*c*)(3). In count two the State charged Maxwell with failure to possess a tax stamp, a class "D" felony, in violation of sections 453B.3 and 453B.12. The State also sought a habitual offender enhancement of both charges under section 902.8. Maxwell waived his right to a speedy trial and pled not guilty.

A jury trial was held. Under the first count, the jury found Maxwell guilty of the lesser-included offense of possession of a controlled substance in violation of section 124.401(5). Under the second count, the jury found Maxwell not guilty.

Maxwell filed a motion for judgment of acquittal and a motion for new trial. Maxwell claimed the evidence was insufficient to sustain a conviction for the offense of possession of a controlled substance and that the verdict was contrary to the evidence presented at trial. The court denied the motion without a hearing and without stating its reasons for the denial.

After the jury verdict, the State moved to amend the trial information to permit the enhancement of the possession-of-a-controlled-substance charge based upon Maxwell's two prior convictions under chapter 124. The State also maintained its original request that the district court sentence

Maxwell as a habitual offender. The district court permitted the amendment to the trial information without objection.

Maxwell stipulated in open court to two previous felony convictions. Maxwell stipulated that on both November 5, 1999 and May 31, 2000, he was convicted of possession of a controlled substance with intent to deliver.

During the sentencing hearing Maxwell challenged the State's request to use the 1999 and 2000 felony convictions both to classify the possession offense as a felony and to sentence Maxwell as a habitual offender. Maxwell argued to the court that the prior felony convictions could be used to classify Maxwell's current possession offense as a class "D" felony, but those same felony convictions could not be used to sentence Maxwell as a habitual offender. The court rejected this argument, classified the possession conviction as a class "D" felony, and further enhanced the penalty by finding him to be a habitual offender. The court sentenced Maxwell as a habitual offender.

## II. Issues.

In his appeal Maxwell claims (1) the district court erred in classifying his crime as a felony and sentencing him as a habitual offender based upon the same two prior felony convictions; (2) the district court erred when it denied Maxwell's motion for new trial without stating the reasons for its denial; and (3) his trial counsel provided him ineffective assistance when counsel failed to object to the aiding and abetting jury instruction.

## III. Analysis.

**A. The Two Sentencing Enhancements Based Upon the Same Two Prior Felony Convictions.** Maxwell claims the court imposed an illegal sentence. We consider a sentence void if a statute does not authorize it. *State v. Gordon*, 732 N.W.2d 41, 43 (Iowa 2007). Therefore, we will

examine the sentence to determine whether it complies with the relevant statutes. *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005). Consequently, our review is for correction of errors at law. *Id.*

The jury found Maxwell guilty of possession of a controlled substance in violation of Iowa Code section 124.401(5). The legislature classifies a violation of section 124.401(5) as either a misdemeanor or felony based on a defendant's prior drug-related convictions. Iowa Code § 124.401(5). If the defendant has no prior drug-related convictions, a violation of section 124.401(5) is a serious misdemeanor. *Id.* If the defendant has one prior drug-related conviction, a violation of section 124.401(5) is an aggravated misdemeanor. *Id.* If the defendant has two prior drug-related convictions, a violation of section 124.401(5) is a class "D" felony. *Id.* Because Maxwell had two prior drug-related convictions, section 124.401(5) classified his violation as a class "D" felony. Maxwell does not complain that his conviction was for a class "D" felony.

Under the legislature's sentencing scheme for felonies, a person convicted of a class "D" felony, who is not a habitual offender, shall be confined no more than five years, and in addition shall be fined at least $750 but no more than $7500. *Id.* § 902.9(5). Under the same sentencing scheme, a habitual offender shall be confined no more than fifteen years. *Id.* § 902.9(3). A habitual offender includes any person convicted of a class "D" felony who has twice before been convicted of a felony. *Id.* § 902.8. Taking into consideration Maxwell's two prior felony convictions, the district court sentenced Maxwell to fifteen years as a habitual offender under section 902.9(3) rather than to five years as a class "D" felon under section 902.9(5). Maxwell complains his sentence is illegal because the same prior convictions cannot be used to classify his crime as a felony under section

124.401(5) and to sentence him as a habitual offender under section 902.9(3). He claims he should only be sentenced for five years as a class "D" felon.

For Maxwell to prevail on this issue we must hold the legislature intended chapter 124 to be comprehensive and all encompassing when it comes to sentencing violators of chapter 124. We have rejected this argument in three prior decisions. *See State v. Owens*, 635 N.W.2d 478, 484–85 (Iowa 2001); *State v. Sisk*, 577 N.W.2d 414, 416 (Iowa 1998); *State v. Draper*, 457 N.W.2d 600, 603–04 (Iowa 1990). In those decisions we discussed the interplay between sections 902.9(3) and 124.411. Section 124.411 and its predecessor, section 204.411, permit the sentencing court to triple the term or fine it can impose for an offense committed under chapter 124 if the conviction is a second or subsequent conviction under chapter 124. *Id.* In holding the legislature did not intend chapter 124 to be comprehensive and all encompassing in regard to sentencing offenders under section 124.411, we determined the sentencing scheme requires the sentencing judge to look first at the violation under chapter 124 to determine the classification of the offense as either a felony or misdemeanor. *Draper*, 457 N.W.2d at 603. Next, the sentencing judge must look to chapter 902 to determine the appropriate sentence for the defendant's offense. *Id.* In reaching this conclusion we noted chapter 124 "clearly was not intended to stand on its own" because chapter 124 only defines the nature of the offense without determining what sentence the sentencing court can impose. *Id.* We also recognized section 902.9 specifically states it applies to the " 'sentencing of any person convicted of a felony' unless otherwise specified by another statute." *Id.* (citation omitted).

Further indication the legislature intended to allow the same two prior felonies to classify a possession charge as a class "D" felony and to sentence a defendant as a habitual offender can be found in section 124.411. Normally section 124.411 permits the sentencing court to enhance the punishment if the conviction is a second or subsequent conviction under chapter 124. Iowa Code § 124.411(1). However, the legislature exempted this enhancement provision for possession offenses under section 124.401(5). *Id.* § 124.411(3). Had the legislature wanted to prohibit use of the same prior convictions to classify the crime as a felony under section 124.401(5) and to sentence a defendant as a habitual offender under section 902.9(3), it could have done so with specific language, just as it did in section 124.411(3).

Finally, the legislature's purpose for enacting a recidivist statute, such as the habitual offender enhancement, is to deter and punish incorrigible offenders. *State v. Conley*, 222 N.W.2d 501, 503 (Iowa 1974). The legislature made a policy decision to punish a person's recidivism upon a third felony conviction by classifying those persons as habitual offenders. Under Maxwell's interpretation he needs to have four prior convictions—two drug-related and two additional felony convictions of any kind—to sentence him as a habitual offender for violating section 124.401(5). To not allow a court to sentence persons convicted of three drug-related felonies as habitual offenders, without specific language exempting them from the habitual offender statute, would severely undercut the legislative intent.

Accordingly, the district court correctly used the same prior convictions for classifying Maxwell's possession charge as a felony under section 124.401(5) and sentencing him as a habitual offender under section 902.9(3). Therefore, Maxwell's sentence was legal.

**B. The Motion for New Trial.** The district court denied both Maxwell's motion for judgment of acquittal and his motion for new trial. In its order the district court stated in its entirety:

> On February 2, 2006, the Defendant by and through his Counsel has brought before the Court a Motion for Judgment of Acquittal and Motion for New Trial. The Court after reviewing the file hereby DENIES the Defendant's Motion for Judgment of Acquittal and Motion for New Trial.

Maxwell only appeals the district court's ruling on his motion for new trial. A motion for new trial is distinct from a motion for judgment of acquittal. *Compare* Iowa R. Crim. P. 2.24(2)(*b*), *with id.* 2.19(8).

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
>
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
>
> . . . The motion [for new trial] is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

*State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (quoting 3 Charles Alan Wright, *Federal Practice and Procedure* § 553 (2d ed. 1982)).

Maxwell claims the district court erred by failing to state its reasons for denying his motion for new trial and created a situation where this court is left with nothing to review. When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling. Although the

trial court failed to do so, under this record we believe we can review the district court's ruling on Maxwell's motion for new trial.

"We are obliged to affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding." *Citizens First Nat'l Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980). However, we will not apply this rule to a substantive or procedural issue if the parties did not raise the issue in the district court. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (applying this limitation to substantive or procedural issues but not to evidentiary issues).

Even though we have been unable to find a criminal case applying this rule to a motion for new trial when the court denied the motion without giving reasons for the denial, we do have a civil case applying this rule when a court denied a motion to compel arbitration without giving its reasons for the denial. *Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.*, 581 N.W.2d 616, 620 (Iowa 1998), *overruled on other grounds by Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999). In *Modern Piping*, the district court denied a party's motion to compel arbitration in a one-line written order that gave no reason for the denial. *Id.* After reviewing the record, we determined a proper basis appeared in the record to affirm the district court's denial. *Id.* at 622.

In the present case, Maxwell requested a new trial under rule 2.24(2)(*b*)(6). When deciding such a motion, the district court is entitled to weigh the evidence and consider the credibility of the witnesses. *Ellis*, 578 N.W.2d at 658. If the court determines the verdict is contrary to the weight of the evidence and a miscarriage of justice may have occurred, it is within the court's discretion to grant a new trial. *Id.* The weight-of-the-evidence analysis is much broader than a sufficiency-of-the-evidence analysis in that

"it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Only in the extraordinary case, where the evidence preponderates heavily against the verdict, should a district court lessen the jury's role as the primary trier of fact and invoke its power to grant a new trial. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

Maxwell clearly raised the issue of whether the verdict was contrary to the weight of the evidence by citing rule 2.24(2)(*b*)(6) in his motion. Although the State did not file a written resistance to the motion, the issue of whether the verdict was contrary to the weight of the evidence was the only issue the court needed to decide to determine whether Maxwell was entitled to a new trial. In denying Maxwell's motion, the district court must have found the jury's guilty verdict was not contrary to the weight of the evidence. Because Maxwell's motion raised the issue in the district court, we are allowed to review the record to determine whether a proper basis exists to affirm the district court's denial of Maxwell's motion for new trial. In doing so, we review the trial court's ruling for an abuse of discretion. *Nitcher*, 720 N.W.2d at 559.

Our review of the record indicates the greater weight of the evidence supports the jury's verdict. When the State charges a person with possession, the State must prove the person exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was a narcotic. *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002). Actual possession is not required, and proof of constructive possession is enough. *Id.* "[A]ll that is necessary is that the accused 'maintains control or a right to control' the contraband." *Id.* (citation omitted). A person has actual possession of a controlled substance when

that substance is found on the person. *State v. Carter*, 696 N.W.2d 31, 38 (Iowa 2005). A person has constructive possession of a controlled substance " 'when the person has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.' " *Id.* at 38–39 (citation omitted). Constructive possession is recognized by inferences. *Id.* at 39 (citing *State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973)). However, constructive possession cannot rest simply on proximity to the controlled substance. *State v. Cashen*, 666 N.W.2d 566, 572 (Iowa 2003).

Here, Maxwell did not actually possess the drugs. Officer Meskimen found 2.77 net grams of cocaine base in the vehicle Maxwell was driving. However, no drugs were found on Maxwell's person. Additionally, Maxwell did not own the vehicle in which the officer found the drugs.

When a person has not been in exclusive possession of the premises where the drugs were located, several factors are considered when determining whether the person had constructive possession of the controlled substance. These factors include: (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance. *Webb*, 648 N.W.2d at 79. Further, when the premises is a vehicle, the court may also consider these additional factors: (1) was the contraband in plain view; (2) was it with the person's personal effects; (3) was it found on the same side of the car or immediately next to the person; (4) was the person the owner of the vehicle; and (5) was there suspicious activity by the person. *Carter*, 696 N.W.2d at

39. We have stated that all of these factors merely act as a guide to determine whether the State has established constructive possession. *Id.* Even if some factors are present, the court is still required to determine whether all of the facts and circumstances create a reasonable inference that the person knew of the presence of the controlled substance and had control and dominion over it. *Id.* at 39–40.

The evidence supporting the verdict that Maxwell constructively possessed the drugs includes: (1) Maxwell was the only person in the Oldsmobile from the time officer Meskimen saw Maxwell pull out of the convenience store until he apprehended him. *See Cashen*, 666 N.W.2d at 571–73 (finding insufficient evidence to prove constructive possession of a controlled substance found in the backseat of a vehicle occupied by the defendant and six other persons, where defendant and three other persons were in the backseat); (2) the cigarette pack and the protruding plastic baggie containing the drugs were in plain view of Maxwell; (3) the plastic baggie containing the drugs was left inside an empty box of Newport cigarettes, the same brand of cigarettes found on Maxwell's person. *See Carter*, 696 N.W.2d at 40 (finding constructive possession where, amongst other factors, only the plastic baggie containing the substance, not the substance itself, was in plain view, and the baggie was not in a location where one would ordinarily leave it); (4) the drugs were found immediately next to Maxwell, lodged between his seat and the front-passenger seat; (5) when Meskimen activated his top lights, Maxwell continued for approximately one-hundred feet until pulling into the driveway of his residence; (6) when Meskimen parked his patrol car so it was partially blocking the driveway, Maxwell did not remain in his vehicle, but instead exited the vehicle, walked toward his residence, and attempted to go inside.

*See id.* (finding constructive possession where, amongst other factors, the driver-defendant did not immediately stop when the police officer activated his lights); and (7) Maxwell was the most recent driver of the vehicle. *See State v. Kemp*, 688 N.W.2d 785, 790 (Iowa 2004) (finding constructive possession where the defendant was the owner and most recent driver of the vehicle).

The only witnesses to testify at the trial were the four presented by the State. All were police officers for the city of Urbandale at the time of Maxwell's arrest. Officer Meskimen testified to the facts pertaining to the stop, search, and arrest of Maxwell. He opined the quantity of drugs found near Maxwell was consistent with an amount possessed by a person with intent to sell the drugs. The second witness, sergeant Matt Logsdon, was not involved in the arrest of Maxwell. He also testified the quantity of drugs found was consistent with an amount possessed by someone intending to sell the drugs. The third witness, officer McCarty, was backup to officer Meskimen at the time of the search. He testified he watched Maxwell while Meskimen conducted the search. The final witness, detective Terry Depold, testified as to the chain of custody of the drugs and his dealings with the DCI criminalistics laboratory regarding the analysis of the drugs.

Maxwell's attorney challenged the witnesses' opinions regarding whether the amount of drugs Maxwell had in his possession was consistent with a quantity possessed by someone with intent to deliver. Defense counsel was successful in his questioning because the jury found Maxwell guilty of the lesser-included charge of possession. However, there was no controversy about where the officer found the drugs. The jury made the determination that Maxwell was in constructive possession of the drugs.

The jury's determination of guilt was not contrary to the weight of the evidence.

Accordingly, the district court did not abuse its discretion in overruling Maxwell's motion for new trial under rule 2.24(2)(*b*)(6).

**C.** **The Inclusion of an Aiding and Abetting Jury Instruction.** Maxwell claims he was denied effective assistance of counsel when his trial counsel did not object to the aiding and abetting jury instruction. Claims of ineffective assistance of counsel have their basis in the Sixth Amendment to the United States Constitution and thus, are reviewed de novo. *Nitcher*, 720 N.W.2d at 553. Even though these claims are generally preserved for post-conviction relief, when presented with a sufficient record this court will address such a claim. *Id.* In this case, the record is sufficient to permit a ruling.

In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984); *accord Nitcher*, 720 N.W.2d at 553. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. In other words, "[i]neffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S. Ct. 2456, 2462, 162 L. Ed. 2d 360, 371 (2005) (internal citations omitted).

Under the first element, we measure counsel's performance against the standard of a reasonably competent practitioner. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). In doing so, we start with the presumption that the attorney performed his duties in a competent manner. *Id.* In making the determination of whether an attorney failed to perform an essential duty, this court "avoid[s] second-guessing and hindsight." *Id.* We scrutinize each claim based on the totality of the circumstances. *Id.*

Prejudice exists where the claimant proves by "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Bowman v. State,* 710 N.W.2d 200, 203 (Iowa 2006).

> [T]he prejudice prong of the *Strickland* test "does not mean a defendant must establish 'that counsel's deficient conduct more likely than not altered the outcome in the case.' A defendant need only show that the probability of a different result is 'sufficient to undermine confidence in the outcome.' "

*Id.* at 206 (citations omitted). To determine whether prejudice exists we " 'must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial.' " *Id.* (citation omitted).

Maxwell must prove, by a preponderance of the evidence, both that counsel failed to perform an essential duty and that prejudice resulted. *Ledezma,* 626 N.W.2d at 142. However, if the claim lacks the necessary prejudice, we can decide the case on the prejudice prong of the test without deciding whether the attorney performed deficiently. *Id.*

As the State points out, "[t]he parties agree that there was no evidence under which Maxwell could be found guilty as an aider and abetter." True, the district court should not have given the aiding and abetting instruction when no evidence of another person's involvement was

presented at the trial. *See State v. Mays*, 204 N.W.2d 862, 864 (Iowa 1973); *see also State v. Smith*, 129 Iowa 709, 717, 106 N.W. 187, 190 (1906) (finding "the giving of a jury instruction which has no basis in the evidence is reversible error"). However, even if we assume defense counsel failed to perform an essential duty by failing to object to the instruction, we are not convinced Maxwell has established the prejudice prong of *Strickland.*

Maxwell argues the aiding and abetting instruction created prejudice because it misstated his culpability and permitted the jury to speculate about possible facts not presented at trial. Maxwell relies on *State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) and *Mays*, 204 N.W.2d at 864, to support his argument. This reliance is misplaced because both *Jackson* and *Mays* relate to a defendant challenging jury instructions on direct appeal. *See Jackson*, 587 N.W.2d at 766 (reviewing the defendant's direct appeal of the district court's giving of a joint criminal conduct jury instruction); *Mays*, 204 N.W.2d at 865 (reviewing the defendant's direct appeal of the district court's giving of an aiding and abetting jury instruction).

We have made it clear that ineffective-assistance-of-counsel claims based on failure to preserve error are not to be reviewed on the basis of whether the claimed error would have required reversal if it had been preserved at trial. *State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990). Rather, a defendant must demonstrate a breach of an essential duty and prejudice. *Id.* In ineffective-assistance-of-counsel claims "the instruction complained of [must be] of such a nature that the resulting conviction violate[s] due process." *State v. Hill*, 449 N.W.2d 626, 629 (Iowa 1989).

When the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have

been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results. *State v. Tejeda*, 677 N.W.2d 744, 755 (Iowa 2004). Further, when there is no suggestion the instruction contradicts another instruction or misstates the law there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim. *Id.*

Under the facts contained in this record, we do not believe the aiding and abetting instruction misstated Maxwell's culpability in a material way. Aiding and abetting occurs when a person actively participates or in some manner encourages the commission of a crime prior to or at the time of its commission. *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). Knowledge of the crime is insufficient in and of itself to prove aiding and abetting. *Id.* Likewise, presence at the scene of the crime, without more, is not enough to uphold a finding of guilty by aiding and abetting. *Id.* Maxwell was the only person present at the scene of the crime. Although another person owned the vehicle, the record is devoid of any evidence that would allow the jury to find Maxwell encouraged anyone to possess the drugs found in the vehicle or that any of his actions equaled active participation. Under this record, we doubt this instruction had any effect on the jury's decision.

As we stated in the prior division of this opinion there was sufficient evidence to support the jury's verdict finding Maxwell guilty of possession of a controlled substance in violation of section 124.401(5). Thus, there was no opportunity for him to be found guilty based on anything other than his own possession of the drugs.

Given the overwhelming evidence supporting Maxwell's guilt and the negligible effect the aiding and abetting jury instruction could have had on the verdict, we conclude there was no reasonable probability that, but for

counsel's failure to object to the instruction, the result of the proceedings would have been different. *See Tejeda*, 677 N.W.2d at 755 (finding where the prosecution presents ample evidence of the defendant's guilt and the effect of the superfluous jury instruction is merely speculative, no prejudice results in an ineffective-assistance-of-counsel analysis).

Accordingly, Maxwell failed to establish the prejudice prong of the *Strickland* test. Therefore, he failed to prove his ineffective-assistance-of-counsel claim.

**IV. Disposition.**

Having found the district court did not err by imposing two sentencing enhancements based on the same two prior felony convictions, the district court correctly decided Maxwell's motion for new trial, and his counsel did not provide ineffective assistance when he failed to object to the aiding and abetting instruction, we affirm Maxwell's conviction and sentence.

**AFFIRMED.**