# IN THE COURT OF APPEALS OF IOWA

No. 15-2068
Filed June 7, 2017

**ANTONIO DANTZLER,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

The applicant appeals the district court decision denying his request for postconviction relief from his convictions on two counts of first-degree robbery, assault while participating in a felony, and possession of a firearm as a felon. **AFFIRMED.**

John J. Wolfe of Wolfe Law Office, Clinton, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.

Considered by Mullins, P.J., and Bower and McDonald, JJ. Tabor, J., takes no part.

**BOWER, Judge.**

Antonio Dantzler appeals the district court decision denying his request for postconviction relief from his convictions on two counts of first-degree robbery, assault while participating in a felony, and possession of a firearm as a felon. We find Dantzler has not shown he received ineffective assistance based on his claims defense counsel did not properly advise him about the consequences if he decided to testify at his criminal trial and postconviction counsel did not develop the record to show he was prejudiced by the conduct of defense counsel regarding DNA evidence. We affirm the decision of the district court.

## I.    Background Facts & Proceedings

The following facts were set out in Dantzler's direct appeal:

> On the afternoon of June 11, 2008, a Prime Mart convenience store and Dollar General store in Waterloo were robbed. Witnesses to the robberies reported the incidents by calling 911. Patrol officer, Brad Walter, testified that he responded to a call from dispatch reporting that suspects of the robbery fled in a dark colored SUV. As Walter drove toward the Dollar General store, he saw a black SUV with passengers matching the witnesses' description of the suspects. When Walter turned on his lights to perform an investigative stop of the SUV, a chase ensued. The SUV crashed into a house and the driver and passenger fled on foot through a residential neighborhood. Dantzler was arrested when a resident alerted officers that he was sitting on her front steps, she did not know him, and he matched the description of the suspects.

*State v. Dantzler*, No. 09-1363, 2010 WL 3155229, at *1 (Iowa Ct. App. Aug. 11, 2010).

Dantzler was charged with two counts of first-degree robbery, assault while participating in a felony, and possession of a firearm as a felon. The evidence against Dantzler included a white cloth found in the SUV. Video

evidence showed one of the perpetrators used a white cloth to cover his face during the robberies. "The white cloth was tested for DNA and the test found that Dantzler was a possible contributor to the profiles found." *Dantzler v. State*, No. 11-1586, 2012 WL 4513910, at *3 (Iowa Ct. App. Oct. 3, 2012). "The test concluded, 'Assuming more than one contributor, approximately 1 out of 100,000 unrelated individuals for [the first sample] and 1 out of 8000 unrelated individuals for [the second sample] would be included as possible contributors to these mixture of profiles.'" *Id.* Dantzler did not testify at his criminal trial. The jury found him guilty of the charges against him. Dantzler's convictions were affirmed on appeal. *Dantzler*, 2010 WL 3155229, at *5.

Dantzler filed an application for postconviction relief on January 22, 2013. He claimed defense counsel misadvised him on whether to testify during his criminal trial. He also claimed defense counsel should have objected to the introduction of DNA evidence by a report, rather than through the testimony of an analyst, and the defense should have obtained its own DNA expert.[1]

When asked at the postconviction hearing why he wanted to testify, Dantzler stated, "So I can clear my name." He stated defense counsel advised him not to testify because "the State can bring up your background and they going to chew you up." Dantzler stated defense counsel did not understand the DNA evidence. On the issue of whether he advised Dantzler to testify, defense counsel stated, "[H]e had some prior felonies, you know, items that the State

---

[1] In an earlier postconviction action, we preserved for a subsequent proceeding the issue of whether Dantzler received ineffective assistance because defense counsel did not rebut the DNA evidence, as the record in the first postconviction proceeding was not sufficient to address the issue. *Dantzler*, 2012 WL 4513910, at *3-4.

could hit his credibility with I am sure was a concern." Defense counsel stated Dantzler was aware he could be impeached by his prior felonies if he took the stand and it was Dantzler's decision not to testify. On the issue of the DNA evidence, defense counsel stated, "I basically wanted to down play that issue with that evidence." Defense counsel stated he did not want to emphasize the DNA evidence by calling attention to it or by presenting a defense expert.

The district court denied Dantzler's application for postconviction relief. The court found if Dantzler had decided to take the stand he could have been impeached by prior felonies. The court concluded Dantzler had not shown he received ineffective assistance based on counsel's advice not to testify. On the issue regarding the DNA evidence, the court found defense counsel engaged in a trial strategy not to call attention to the evidence by requiring the evidence to be discussed by an analyst or by presenting a defense expert on the subject. The court determined there was no merit to Dantzler's claim of ineffective assistance of counsel on this issue. Dantzler now appeals.

## II.    Standard of Review

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, an applicant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the applicant a fair trial. *Id.* An applicant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

### III. Ineffective Assistance

**A.** Dantzler claims he received ineffective assistance because defense counsel did not properly advise him about the consequences if he decided to testify at his criminal trial. He states not all of his previous convictions could have been used to impeach him under Iowa Rule of Evidence 5.609.[2] Dantzler agrees the State might have been able to establish he had (1) a conviction for "a felony crime of dishonesty" based on a 1997 conviction for robbery; (2) a "felony conviction" based on a conviction for going armed with intent; and (3) a conviction for "a felony crime of dishonesty" based on a conviction for extortion. He states, however, if he had known these were the only convictions the State could use to impeach him, he would have decided to testify.

Defendants have a constitutional right to testify in their own defense. *Ledezma v. State*, 626 N.W.2d 134, 146 (Iowa 2001). "The decision whether or not to testify belongs to the defendant, and the role of counsel is to provide advice to enable a defendant to make the decision." *Id.* Our supreme court has stated:

> Counsel has a duty to advise the defendant about the consequences of testifying so that an informed decision can be made. The decision is often extremely difficult to make, but "can be the single most important factor in a criminal case." Generally, the advice provided by counsel is a matter of trial strategy and will not support a claim of ineffective assistance absent exceptional circumstances. However, when a defendant follows the misinformed advice of counsel concerning the consequences of testifying, ineffective assistance of counsel may occur.

---

[2] Dantzler also had convictions for (1) manufacture or distribution of a look-alike controlled substance; (2) conspiracy to sell a controlled substance to person under eighteen; (3) robbery; (4) manufacture or delivery of a controlled substance; (5) extortion; and (6) going armed with intent.

*Id.* at 146-47 (citations omitted).

Dantzler stated defense counsel told him if he testified "the State can bring up your background and they going to chew you up." Defense counsel stated he told Dantzler there was a concern because the State could attack his credibility with prior felonies. He stated the prosecutor had communicated he intended to impeach Dantzler with his prior felonies if he took the stand. Defense counsel stated Dantzler was aware he could be impeached by prior felonies and he decided not to testify.

There is no evidence to show defense counsel told Dantzler he could be impeached by all of his prior felonies if he testified. Dantzler agrees at least some of his prior felonies could have been raised by the State if he decided to testify. Defense counsel properly advised Dantzler the State would try to challenge his credibility through evidence of his criminal background. Furthermore, we do not find credible Dantzler's testimony he would have decided to testify if he had known some, but not all, of his prior convictions could be used to impeach him. We determine Dantzler has not shown he received ineffective assistance of counsel due to advice he received about whether to testify at his criminal trial.

**B.** Dantzler claims he received ineffective assistance because postconviction counsel did not develop the record to show he was prejudiced by the conduct of defense counsel regarding the DNA evidence. He states defense counsel should have retained an expert to assist him in understanding the significance of the DNA evidence and to explain it to the jury. Dantzler states postconviction counsel should have presented evidence to show it was likely the

result of the trial would have been different if Dantzler had presented an independent DNA analysis.

During the postconviction hearing, defense counsel testified sometimes calling a defense DNA expert "can quite frankly backfire." He also stated:

> Q. Now in this case when you represented Mr. Dantzler in not calling the criminalist from the lab or calling your own expert for the DNA, did you make a strategic decision to not do that, to not call—have the DCI criminalist testify nor call your own expert? Was that a strategic decision on your part? A. Well, it was—I think it would fall under what you call trial strategy.
> . . . .
> Q. Okay. So does that further help you to explain to us why you didn't have the DCI person come to testify about the results or call your own DNA expert? A. Well, I think—yeah, that relates to that. You know, it's a judgment call.
> . . . .
> Q. Okay. And in not calling your own DNA expert or having it analyzed, you didn't believe or did you have any reason to believe that the result would be any different had you called your own DNA expert? A. I—of course that wasn't—if I recall, that was not done.
> Q. Okay. But is the reason that not done for strategy purposes because you didn't feel—? A. Yeah, that is what I would consider it, yes.

We conclude defense counsel made a strategic decision not to retain an expert or present an independent DNA analysis. As defense counsel stated, hiring an expert and presenting the expert's testimony may well have backfired because it would have highlighted the DNA evidence linking Dantzler to the armed robberies. "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011). Counsel's "strategic decisions made after [a] 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010)

(citation omitted). We determine Dantzler has not shown he received ineffective assistance from postconviction counsel on the issue of the DNA evidence.

We affirm the decision of the district court denying Dantzler's application for postconviction relief.

**AFFIRMED.**