# IN THE COURT OF APPEALS OF IOWA

No. 16-1616
Filed September 27, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHRISTOPHER ALLEN MOORE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

        The defendant appeals his conviction of criminal mischief in the first degree. **AFFIRMED.**

        Rees Conrad Douglas, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Christopher Moore appeals his conviction of criminal mischief in the first degree. Moore challenges both the sufficiency and the weight of the evidence supporting his conviction. In both respects, he claims the evidence does not establish he was the person who committed the crime.

**I. Background Facts and Proceedings.**

In November 2015, Moore was charged by trial information with criminal mischief in the first degree. It was alleged that on the night of November 11, 2015, he had intentionally damaged a number of pieces of construction equipment and a neighbor's truck that were parked near Moore's house and the resulting damage was more than $10,000. The construction equipment was in Moore's neighborhood in connection with work on a broken water main.

A few months later, Moore filed a notice of alibi, stating his father would testify Moore was at the father's house during the time the vandalism was alleged to have occurred.

The matter proceeded to a jury trial in July 2016. At trial, Moore's neighbor of several years, Renea Junck, testified she heard a noise outside at approximately 9:00 p.m. on the night in question; the noise led her to look outside through one of her home's windows. Once she did so, she recognized Moore's truck as he drove it, pushing a construction sign into another vehicle on the street. She then saw Moore exit the vehicle and enter his home. A few minutes later, Moore exited his home, picked up a brick, and threw it through the windshield of another vehicle. She next saw him enter his home and then come back out carrying what appeared to be some type of tool. Moore methodically

went from tire to tire on the various pieces of machinery on the street; Junck testified she could tell Moore was "messing with the tires," but it was initially unclear exactly what he was doing. At some point, she recognized he was pushing the tool—what she believed to be a drill—into the tires. Junck called 911 at approximately 9:21 p.m.; she reported her neighbor had broken a window in a piece of construction equipment and, although she could not tell exactly what he was doing, he was now working his way down the block to all of the pieces of construction equipment. Junck did not know Moore's name, but she described Moore's residence, his vehicle, his physical appearance, and what he was wearing.

Junck's boyfriend, Justin Stricker, testified similarly. He was sitting with Junck when he heard a loud noise outside. When he looked out, he recognized Moore's truck and he saw Moore use the truck to push a construction sign into a vehicle on the street. Moore then went into his home for approximately five to ten minutes before he returned outside and threw a brick through the windshield of a truck. Stricker could not remember if he saw Moore enter his house again, but he remembered seeing Moore around the construction equipment with something in his hands. Stricker noticed Moore was standing next to the tires, but he could not tell what he was doing to them.

Local police officers responded to the call from Junck at approximately 9:30 p.m. The officers noted a number of punctured tires, stating they could hear the hissing of the expelling air as soon as they got near the equipment. In addition, a number of windows were broken in a piece of John Deere equipment and the windshield of a white truck was damaged. The officers checked the

registration of the vehicle Junck had described in her call to 911 and found that it was registered to Moore at the address Junck had described. The officers then attempted to make contact with Moore, but no one answered the door of his home. The officers noted a fresh, muddy footprint in Moore's enclosed front porch.

Different police officers returned the next day in another attempt to speak with Moore. When Moore came to his front door, the officers told him they wanted to speak to him about damage to the construction equipment. Moore had complaints about construction equipment, barricades, and debris and tried to show the officers images on his cellphone. He also complained of vandalism that had occurred to his truck. When Moore tried to go back inside his home, the officers arrested him.

The State presented uncontroverted evidence that the damages sustained by the vehicle and various pieces of equipment cost approximately $15,000.

Moore's father, Gary, testified Moore called him at approximately 8:25 p.m. on the night in question and that Moore then walked over to Gary's house, arriving around 8:30 and staying until after 11:00.

Moore testified in his own defense. He stated he got home at approximately 7:30 p.m. on November 11 and stayed there until approximately 8:20, when he began to walk to his father's home. He did not notice anything unusual or strange either when he left the house or when he returned. Moore denied being the person who caused the damage.

At the close of the evidence, Moore made a motion for a judgment of acquittal, arguing "that even with all of the evidence presented in the light most

favorable to the State, they haven't been able to establish beyond a reasonable doubt that Christopher Moore was the one that actually committed the crime." The court denied Moore's motion.

The jury returned a verdict finding Moore guilty of criminal mischief in the first degree.

Moore filed a motion for a new trial, claiming the weight of the evidence did not support the jury's guilty verdict. The court decided the motion at Moore's sentencing hearing, ruling:

> In regards to the motion for new trial, it's a little different. The court gets to weigh the evidence and consider the credibility of the witnesses. If the court were to reach the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
> The new trial motion is addressed to the discretion of the court and should be exercised with caution and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. So using that standard, the court finds that the motion for new trial should be denied.

The court then proceeded to sentence Moore to a term of incarceration not to exceed ten years, with the entire sentence suspended. Moore was placed on probation for a period of two years.

Moore appeals.

**II. Sufficiency of the Evidence.**

Moore claims the evidence presented at trial was insufficient to establish his identity as the person who caused the damage. "We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). "We consider the evidence in the record 'in the

light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted).

Here, two of Moore's neighbors testified they saw him cause the damage. Junck did not know Moore's name as of November 11, 2015, but she recognized his vehicle, watched him enter and leave his house, and testified she recognized his face. The vehicle she reported he was driving was later checked by the police, who matched the registration of the vehicle to the home Junck described. Similarly, Stricker also recognized Moore's vehicle and testified he saw him enter and leave his home. Both Junck and Stricker had been Moore's neighbor for a number of years at the time of the incident, and both testified they had "no doubt" it was Moore they saw on that night. Although Moore denied he had caused the damage and Moore's father provided an alibi, Moore did not tell officers—either before they arrested him or directly after—that he had an alibi for the previous night; he filed his notice of alibi some three months later. Viewing the evidence in the light most favorable to the State, there is substantial evidence to support the jury's verdict.

### III. Weight of the Evidence.

Moore claims the weight of the evidence does not support the jury's conclusion he was the person who caused the damage.[1] When a party challenges the weight of the evidence, the "test is more searching than the

---

[1] Moore also complains the district court's ruling on his motion for new trial did not include any statements about the credibility of the witnesses, stating "[t]he district court might well have weighed credibility and considered evidence, but the process of the weighing is not evidence in the ruling." Moore has not cited any authority for the proposition that the court is required to make such statements, and, in fact, our supreme court has affirmed the district court's denial of a motion for new trial when the "court denied the motion without a hearing and without stating its reasons for the denial." *See State v. Maxwell*, 743 N.W.2d 185, 190 (Iowa 2008).

sufficiency-of-the-evidence test, involves questions of credibility, and requires the district court to determine whether more credible evidence supports one side of the other." *State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017). Trial courts have been cautioned, however, "'to exercise this discretion carefully and sparingly' because of the deference owed to the jury's credibility determinations." *Id.* at 71 (citation omitted). "We review the trial court's ruling on a motion for a new trial for abuse of discretion." *Id.* "When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling." *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008). When the trial court has failed to do so, we may review the record to determine if there is a proper basis for the trial court's ruling. *Id.* at 192–93.

As noted above, two eyewitnesses who had been neighbors of Moore for five or six years testified they saw him pick up a brick and break windshields and then use a tool—likely a drill—to puncture the tires of various pieces of construction equipment. Junck's call to 911 on the night in question both corroborated her testimony and provided details about Moore that the police were later able to corroborate—the vehicle he drives and his home address. Although Moore attempts to discredit the eyewitnesses' testimony by questioning each of their abilities to see the face of the perpetrator in the dark, Junck and Stricker also saw the person driving Moore's vehicle and entering and leaving Moore's home. Moore maintains the greater weight of the evidence establishes he was not at the site at the time of the damage, but the jury apparently found the neighbors' testimony more credible than that of Moore and his father, who testified they were together at Gary's home during the time the damage took

place. The evidence showed that Moore did not tell the police he had an alibi at the time of his arrest, and he had an obvious motive for providing testimony he was elsewhere at the time of the incident.

The jury made the determination Moore was at the scene and caused the damage. On our review of the record, we agree with the conclusion of the district court that the jury's finding of guilt was not contrary to the weight of the evidence. *See id.* at 195. Accordingly, the district court did not abuse its discretion in denying Moore's motion for new trial. *See id.*

**IV. Conclusion.**

Substantial evidence and the weight of the evidence support Moore's conviction of criminal mischief in the first degree. We affirm.

**AFFIRMED.**