## IN THE COURT OF APPEALS OF IOWA

No. 19-1341
Filed November 4, 2020

**KEVIN JOHNSON,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

Defendant appeals the denial of postconviction relief from convictions for two counts of burglary, first-degree theft, and second-degree theft as a habitual offender. **AFFIRMED.**

Priscilla E. Forsyth, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

In 2015, Kevin Johnson was convicted on three counts of third-degree burglary as an habitual offender, one count of first-degree theft, and one count of second-degree theft following a bench trial. Johnson appealed, and in 2016, this court affirmed his convictions for the burglary and theft from L&K Laundry (counts three and four) and the burglary and theft from a Family Dollar store (counts one and five) but reversed his conviction on count two, third-degree burglary of a Sioux City Jehovah Witness Church. *See State v. Johnson*, No.15-1580, 2016 WL 7403723 (Iowa Ct. App., Dec. 21. 2016). Following that appeal, Johnson applied for postconviction relief (PCR). The district court denied relief on all grounds following the PCR trial. Johnson now appeals.

### Facts and Proceedings

In his PCR application, Johnson asserted eight grounds of ineffective assistance of counsel related to the performance of his trial counsel and one ground related to his appellate counsel.[1] After the May 2019 trial on the PCR application, the district court denied relief, specifically addressing six of the nine claims. Johnson narrows his PCR appeal to three grounds of ineffective

_____

[1] Specifically, Johnson claimed trial counsel provided ineffective assistance by: 1) not investigating or using an alibi defense; 2) not moving to suppress or challenge the "planting" of evidence; 3) not properly impeaching the testimony of witness Carmen Gonzalez and co-defendant Jimmy Johnson; 4) failing to investigate cell phone evidence to challenge testimony of Gonzalez; 5) not procuring the testimony of potential witness Teresa Aguirre and impeaching her with her false statement to police; 6) not objecting to the hearsay statements of Gonzalez's children that Johnson's shoes were in the back of the van and deposing the children about the statements; 7) giving deficient advice regarding waiver of the right to jury trial; and 8) failing to raise these issues under the Iowa and United States Constitutions. He also alleged appellate counsel provided ineffective assistance infailing to raise the issues involving trial counsel under the Iowa and United States Constitutions.

assistance of counsel. Johnson argues he received ineffective assistance of counsel because trial counsel (1) failed to obtain phone records that he claims would have contradicted some of witness Gonzalez's testimony at trial, (2) failed to depose witness Gonzalez before the underlying trial, and (3) failed to investigate two witnesses that could have provided Johnson an alibi or assisted at trial. All three grounds fall under the umbrella of counsel's duty to conduct a reasonable investigation.

In the previous appeal, we summarized the underlying crimes involved here as follows:

> **L&K Laundry**
>
> During the night of January 24, 2014, L&K Laundry in Sioux City was burglarized. When the laundry opened for business in the morning, the owner discovered the break-in and reported it to the Sioux City police. In investigating, police observed damage to the back door and a bar/brace inside the door indicating the door had been pried open. Additionally, officers found that the phone line on the outside of the building and wires connected to two alarms inside the building were cut. A safe inside the laundry office area had been moved, pried open, and the contents stolen. An identification technician processed the laundromat. No fingerprints were discovered; however, a partial shoe print consistent with Nike Shox shoes was obtained from on top of the safe.

*Johnson*, 2016 WL 7403723 at *2.

> **The Family Dollar Store**

The Family Dollar Store was burglarized early in the morning on March 17, 2014. Officers responded after a person reported that the east door of the store was open and that they could hear noises inside the store. The facts from Johnson's direct appeal, taken from the district court's findings are:

> Officer Noltze arrived first and parked on the east side of the store where he observed the open door . . . .

Officers Fleckenstein and Hansen arrived just after Officer Noltze.  As Officers Fleckenstein and Hansen pulled in on the west side of the building, they both observed two individuals wearing dark clothing and appearing to be carrying something running out of the front door of the store on the south side of the building, then  running west and then north around the building, and then going down into a ravine that ran approximately east-west to the rear or north of the store. . . .  Officer Noltze crossed a bridge and parked on the north side of the ravine.

From his position on the north side of the ravine, Officer Fleckenstein could hear noises down in the ravine under the bridge; however, he could not see any persons because it was still dark at that time of the day.  He then called his K-9 Eik and gave a standard verbal K-9 warning to the persons under the bridge.  Immediately after giving this warning, one of the persons began running in a northwesterly direction within the ravine; however, Officer Fleckenstein and K-9 Eik were unable to get down into the ravine and catch up to this person due to the darkness, the difficult terrain, and the brush or thickets growing in the bank of the ravine.

Officer Fleckenstein and K-9 Eik then returned to the bridge, and he gave another K-9 warning to the other person who was still hiding in the ravine. Officer Fleckenstein then found an area for Eik to go down into the ravine, and K-9 Eik shortly thereafter apprehended that person.  The person apprehended under the bridge was Jimmy [Kevin Johnson's accomplice] . . . .

Id. at *3 (alterations in original).

As these events were occurring in the ravine with Officer Fleckenstein, Officer Noltze went inside and "cleared" the Family Dollar Store for other persons. Officers Harstad and Brian Reed also subsequently responded to the call and investigated the inside and outside of the store.  Id.  "While Officers Harstad and Reed were investigating the store, the store manager, Cheryl Kollbaum, was called, and she walked around the inside and outside of the building with the officers. . . ."  Id.  (alteration in original).  Inside the store, they observed damage to both the safe and an ATM machine.  "They noted damage to the electrical system and cut phone lines in a back room area of the store and damage to a heat

sensor on the ceiling . . . ." *Id.* (alteration in original). "Directly beneath the heat sensor, they observed a footstool with a shoe print. . . ." *Id.* (alteration in original).

> After Officer Noltze cleared the inside of the store and Officers Halstead and Reed arrived at the store, Officer Noltze then used his K-9 in an effort to "track" the other person who had run away from the bridge. Officer Noltze and his K-9 tracked that person in the ravine and through underground culverts. Officer Notlze and his K-9 lost the scent of the person on the street level above the culvert in the area of South Rustin Street.
> . . . .
> . . . Carmen Gonzalez-Castro . . . testified at trial. Ms. Gonzalez testified that in the early morning hours of March 17, [Kevin Johnson] called her asking for a ride because his vehicle had broken down. Ms. Gonzalez further testified that she . . . picked up Defendant at a location just north of the area where the culvert passes under South Rustin Street. Ms. Gonzalez testified that Defendant was alone and got into the backseat of her van. She further testified that Defendant was wearing dark clothing, was muddy, and sounded and appeared to be out of breath. According to Ms. Gonzalez, Defendant asked her to drop him off at an apartment building located behind his residence, which she did. According to Ms. Gonzalez, she noticed as Defendant got out of her vehicle that his back left pant leg was torn, and his leg appeared to be bleeding.
> Ms. Gonzalez further testified that the next morning, March 18, her children noticed clothing items in the rear storage area of the van, specifically a pair of muddy Nike Shox tennis shoes, a pair of white cotton gloves, and a black or gray mask. Ms. Gonzalez and Theresa Aguirre then put these items in a plastic bag and took them to Defendant's residence and left them with Defendant's spouse, Sherri Johnson. They then contacted the Sioux City Police. Officer Martinez subsequently retrieved and seized the bag of items which had been placed by Sherri Johnson in the backyard of the residence.
> . . . .
> [Identification] Tech Roach processed evidence obtained at . . . the Family Dollar. No fingerprints were discovered; however, a partial shoe print was taken . . . from the footstool at the Family Dollar. [The] shoe print [was] consistent or otherwise similar in size and pattern to Defendant's Nike Shox shoes.

*Id.* at *4 (alteration of final paragraph in original).

**Preservation of Error**

The district court denied Johnson's application for PCR. The court explicitly addressed six of Johnson's nine claims. The State points out the postconviction court never directly addressed Johnson's claim that trial counsel was ineffective for failing to investigate cell phone records and asserts that by failing to file a motion to enlarge the court's ruling, Johnson failed to preserve error on that claim. However, the record shows the court partially addressed his claim in the context that trial counsel failed to challenge a lack of corroboration of Gonzalez's testimony involving phone calls.[2] When ruling on a PCR application, district courts are required to make specific findings of fact and conclusions of law on every issue, but "[e]ven if the court does not respond to all of the applicant's *allegations*, the ruling is sufficient if it responds to all the *issues* raised." *Gamble v. State*, 723 N.W.2d 443, 446 (Iowa 2006). In sum, although Johnson failed to file a motion to enlarge the district court's ruling on the cell phone records claim, the district court acknowledged the cell phone argument and then generally analyzed trial counsel's sufficient effort to dispute Gonzales's credibility, so we will consider the merits of his claim.

**Standard of Review**

"We typically review postconviction-relief proceedings on error. However, when the applicant asserts claims of a constitutional nature, our review is de novo.

---

[2] In the PCR ruling, the district court referenced Johnson's claim that his trial counsel was ineffective because he failed to challenge the lack of corroboration of the Gonzalez phone call.

Thus, we review claims of ineffective assistance of counsel de novo." *Ledzema v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (citations omitted).

**Ineffective Assistance of Counsel**

"In order to succeed on a claim of ineffective assistance of counsel, an applicant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The applicant must prove both prongs by a preponderance of the evidence. *State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999). "Under the first element, we measure counsel's performance against the standard of a reasonably competent practitioner." *Maxwell*, 743 N.W.2d at 195 (citing *Ledzema*, 626 N.W.2d at 142). "In doing so, we start with a presumption that the attorney performed his duties in a competent manner. In making the determination of whether an attorney failed to perform an essential duty, this court 'avoid[s] second guessing and hindsight.'" *Id.* (citations omitted). We perform our analysis based on the totality of the circumstances. *Id.*

Our supreme court has noted that "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Ledzema*, 626 N.W.2d at 142. Johnson focuses his claims on a perceived lack of diligence by trial counsel in failing to adequately investigate certain evidence and depose potential witnesses. "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary. Thus, the duty to investigate is not unlimited, and trial counsel is not required to interview every potential witness." *Id.* at 146 (citations omitted). "In each instance, the

decision to investigate a particular matter must be judged in relationship to the particular underlying circumstances." *Id.* (citation omitted).

Turning to the prejudice prong, "the applicant must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 143 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 698.

**Investigation of Cell Phone Records**

Johnson maintains that trial counsel failed to obtain phone records that could have been used to impeach Gonzalez's credibility regarding a phone call Johnson allegedly made to her the morning of March 17. He theorizes the phone log would prove he did not make at least some of the calls alleged by Gonzalez. Gonzalez testified that Johnson called her that morning and asked for a ride because his car broke down. Johnson denied calling Gonzalez that morning, and he points to inconsistencies in Gonzalez's statements about the timeline and contents of the calls. And in his deposition, trial counsel admitted he never tried to obtain Johnson's phone records but asserted that he did not recall Johnson suggesting the phone records were relevant. During that same deposition, trial counsel's attorney clarified that a download of Gonzalez's phone was provided in discovery but the phone information was inaccessible.

As noted above, Johnson failed to file a motion to enlarge the PCR court's ruling as to this issue. That said, we find his claim lacks merit. Most notably, if Johnson thought cell phone data would show no calls to Gonzalez, he could have turned over his phone to his counsel. Yet trial counsel testified Johnson never

gave him his phone to corroborate that storyline. As noted above, trial counsel confirmed the Gonzalez phone log was provided but the log was inaccessible, so attempts were made by trial counsel to obtain the information. Finally, as the PCR court noted, trial counsel "testified during the trial that he cross-examined Ms. Gonzalez about the phone calls between herself and [Johnson]. At the trial on the underlying offenses, [trial counsel] cross-examined Gonzalez on the discrepancies between her testimony and what she stated in her police interview." This demonstrates efforts made by trial counsel to address Johnson's concerns about Gonzalez's credibility on the phone calls. Under a totality of the circumstances, we do not find trial counsel performed outside the standard of a reasonable competent attorney. *Ledezma,* 626 N.W.2d at 142.

**Investigation of Gonzalez**

Next, Johnson challenges trial counsel's investigation of Gonzalez, a key witness for the State. He argues that,

> without her testimony, there would be little corroboration of the co-defendant's [3] testimony connecting Kevin Johnson to the burglaries in this case.
> . . . .
> A deposition regarding the discovery of the shoes in her van could have led to information that would undermine her testimony and with little corroboration, could have resulted in a different verdict from the court. It is the lack of counsel's diligence that prevented him from attacking the credibility of the State's star witness.

At the PCR trial, trial counsel testified that he could not recall any specific strategy or decision being made as to whether he should depose Gonzalez before

---

[3] Jimmy Johnson was Kevin Johnson's codefendant in the burglaries of L&K Laundry, the Family Dollar Store, and the Jehovah's Witness Church. He pled guilty to all five charges in exchange for the State's recommendation of a maximum sentence of ten years and his agreement to testify against any codefendants.

trial. While trial counsel did not depose Gonzalez, he did review her police interview and noted inconsistent statements about the timeline and contents of phone calls between Johnson and Gonzalez. Overall, trial counsel testified that he was not concerned with the truthfulness of Gonzalez and decided that he "was going to ask her the questions I needed to ask at trial." And at the 2015 trial, trial counsel cross-examined Gonzalez about these inconsistencies and found her testimony "generally consistent" with her police interview.

First we note that "[f]ailure of defense counsel to depose State witnesses is not per se ineffective assistance." *State v. Moncrief*, No. 19-0320, 2020 WL 2988271, at *2 (Iowa Ct. App. June 3, 2020). We find that Johnson failed to establish prejudice resulted from trial counsel's decision not to depose Gonzalez. We cannot say with confidence that the outcome likely would have been different had he deposed Gonzalez or conducted an interview of her children regarding the discovery of Johnson's shoes in the back of her van. Johnson claims that a deposition of Gonzalez "could've led to information that would undermine her testimony and with little corroboration, [and] could have resulted in a different verdict from the court" but we cannot find prejudice based on pure speculation. *See Ledezma,* 626 N.W.2d at 142 (noting courts should avoid "second-guessing and hindsight" when evaluating whether an attorney failed to perform an essential duty).

**Failure to Investigate Potential Defense Witnesses**

Finally, Johnson faults trial counsel for failing to investigate and procure testimony from potential witnesses Dave Putnam and LeAnn Bowman. He argues they could have helped his case or provided an alibi, without offering any specifics

as to how they would have been of assistance. Trial counsel testified at the PCR trial that he did not recall discussing Putnam or Bowman with Johnson and had no notes in his file on either of them. However, trial counsel did try to establish an alibi defense by obtaining Johnson's employment records on the dates in question. Further, at Johnson's request, he sent a letter to an individual Johnson claimed could help establish an alibi. This person responded that he did not want to be involved and could not serve as a credible witness.

Because Johnson fails to explain how Putnam or Bowman could have helped his case or established an alibi and provided no evidence in the PCR trial as to what their testimony would have been, we have no way to know whether further investigation would have led to information changing the result at trial. For these reasons, Johnson has not established that prejudice resulted from trial counsel's failure to investigate these individuals.

In conclusion, we agree with the district court that Johnson failed to establish trial counsel provided ineffective assistance. Johnson asks us to speculate, without specifics, as to how the trial would have gone differently had trial counsel performed a more comprehensive investigation. In doing so, he failed to establish by a preponderance of the evidence that prejudice resulted from trial counsel's performance. Thus, we affirm the district court's denial of his application for PCR.

**AFFIRMED.**