# IN THE COURT OF APPEALS OF IOWA

No. 20-1201
Filed November 3, 2021

**AMY JO PARMER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, Chad Kepros, Judge.

The applicant appeals the district court's summary disposition of her application for postconviction relief following her convictions of involuntary manslaughter and child endangerment resulting in death. **AFFIRMED.**

John W. Pilkington, Marengo, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Amy Parmer appeals the district court's summary disposition of her application for postconviction relief (PCR) following her convictions of involuntary manslaughter and child endangerment resulting in death. Parmer has not shown she received ineffective assistance from counsel during her criminal trial or on direct appeal. We affirm the district court's decision disposing of her PCR application.

### I.        Background Facts &Proceedings

Zyriah Schlitter and Nicole King were the parents of K.S., born in 2008. Schlitter had physical care of the child. He was in a relationship with Parmer, and he and the child would spend weekends at Parmer's apartment. During these weekends, Parmer would watch the child while Schlitter attended a financial management class.

On Sunday, March 21, 2010, Parmer called 911 because the child, who was then seventeen months old, was unresponsive. Doctors determined the child "sustained extensive critical, non-accidental injuries." *See State v. Parmer*, No. 13-2033, 2015 WL 2393652, at *1 (Iowa Ct. App. May 20, 2015). The Iowa Court of Appeals stated:

> The child was in Parmer's care on March 21, 2010, and Parmer testified she gave the child a bath prior to lying the child down. She testified she took the child's clothes off for the bath, but she did not notice any additional bruises on the child's body, beyond bruising on the child's face. However, beyond the marks upon the child's face, the child was covered in significant bruises. For instance, the child had "multiple bruising on the left upper arm starting from the vicinity of the shoulder going down," and those bruises were different colors suggesting the bruises were caused at different times. There were bruises on the child's leg that were blue evidencing "relatively deeper bruises" caused by "significant force."

*Id.* at *8. The child died as a result of brain injuries. *Id.* at *1.

Parmer and Schlitter were charged with first-degree murder and child endangerment resulting in death. They were tried separately. A jury found Parmer guilty of involuntary manslaughter by commission of a public offense, in violation of Iowa Code section 707.5 (2011), and child endangerment resulting in death, in violation of section 726.6(4). The offenses were merged and Parmer was sentenced to a term of imprisonment not to exceed fifty years. Parmer's convictions were affirmed in her direct appeal.[1] *Id.* at *11.

On January 4, 2017, Parmer filed a PCR application, claiming she received ineffective assistance from defense counsel during her criminal trial and appellate counsel on her direct appeal. She asserted defense counsel should have filed a motion for judgment of acquittal to challenge the submission of the intentional act alternative theory of child endangerment. She relied on the Iowa Supreme Court's decision in *State v. Schlitter*, which determined Schlitter was entitled to a new trial because there was not sufficient evidence to submit the intentional act alternative of child endangerment in his criminal case. 881 N.W.2d 380, 391 (Iowa 2016).

The district court denied Parmer's PCR application, finding "[Parmer's] trial counsel's motion for judgment of acquittal was detailed, and raised the issue of there being insufficient evidence to support a jury finding for child endangerment under the intentional act alternative theory." The court found there was sufficient evidence for a reasonable jury to find Parmer guilty on this theory. The court concluded Parmer did not show she received ineffective assistance from defense

[1] Parmer's application for further review was denied by the Iowa Supreme Court.

counsel. The court determined Parmer did not show ineffective assistance from appellate counsel because even if the issue had been raised in the direct appeal, it would not be successful. Parmer appeals the district court's decision.

## II. Standard of Review

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell,* 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, an applicant must prove: (1) counsel failed to perform an essential duty and (2) the failure resulted in prejudice. *State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006). "We presume counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence." *State v. Booth-Harris,* 942 N.W.2d 562, 577 (Iowa 2020).

## III. Ineffective Assistance

**A.** Parmer claims she received ineffective assistance because defense counsel did not adequately challenge the sufficiency of the evidence presented on the intentional act theory of child endangerment. She states that although defense counsel filed a motion for judgment of acquittal, the motion did not raise this issue. She asserts that she was prejudiced because, if the issue had been adequately raised, the intentional act theory of child endangerment would not have been submitted to the jury, as there was not sufficient evidence to support it.

The case was submitted to the jury on four alternative theories of child endangerment. The instructions provided the jury could find Parmer guilty based on a finding she:

> a. Knowingly acted in a manner that created a substantial risk to [K.S.]'s physical health or safety; **or**

b. By an intentional act or series of intentional acts used unreasonable force that resulted in bodily injury or was intended to cause serious injury; **or**

c. Willfully deprived [K.S.] of necessary supervision or medical care appropriate to her age, being reasonably able to make such necessary provisions, which deprivation substantially harmed [K.S.]'s physical health; **or**

d. Knowingly permitted the continuing physical abuse of [K.S.].

In *Schlitter*, "[c]ounsel for Schlitter did not challenge the sufficiency of the evidence to support any of the alternative theories of guilt for a finding of child endangerment."[2]  881 N.W.2d at 389.  The Iowa Supreme Court determined there was not sufficient evidence in the record to support submission of the second alternative to the jury.  *Id.* at 391.  The court noted, "To prove the second alternative, the State must present sufficient evidence that Schlitter either committed an act resulting in the injury or had sole care of K.S. during the time in which the injury occurred." *Id.* at 390.  The court stated:

> [T]he evidence does not reasonably support a finding either that Schlitter committed the violent acts or that he had sole care of her when the injuries were sustained.  During the period of time prior to discovery of the first bruises on K.S., numerous people other than Schlitter had cared for her.  These caretakers included Parmer, day-care providers, King, and several members of Schlitter's family.  Likewise, K.S. had been in the care of several people prior to the time the second set of bruises was discovered.  Additionally, K.S. had been in the care of both Schlitter and Parmer prior to the injuries that led to K.S.'s hospitalization and death.  Finally, Schlitter was not with K.S. during the two hours prior to the 911 call.  There was no testimony that Schlitter had ever inflicted unreasonable force on K.S. in the past or that he had ever shaken her.  To the contrary, the evidence was consistent that Schlitter may have yelled at her when frustrated, but he typically would leave the room to cope with his frustration.

---

[2] The same four alternative theories of child endangerment were submitted to the jury in Schlitter's criminal trial.

*Id.* at 390–91. The court stated, "we cannot conclude that a reasonable jury could find Schlitter inflicted the force on K.S. that resulted in her injuries." *Id.* at 391.

The Iowa Supreme Court found Schlitter received ineffective assistance because defense counsel did not file a motion for judgment of acquittal based on the lack of evidence supporting the second alternative. *Id.* The court also found Schlitter was prejudiced by counsel's failure to file a motion on this ground because "[i]t is not possible to know whether or not the jury relied on this alternative in reaching its verdict."[3] *Id.* (citing *State v. Tyler,* 873 N.W.2d 741, 753–54 (Iowa 2016)). The court determined, "Schlitter must be given a new trial based on ineffective assistance of counsel. A new trial cannot include the second alternative theory for the crime of child endangerment." *Id.*

Parmer argues that, as in *Schlitter*, there is not sufficient evidence in her criminal case for the issue of the intentional act theory of child endangerment to be submitted to the jury. She points out that her jury trial and Schlitter's were based on the same set of facts. Parmer claims she received ineffective assistance from defense counsel because the issue was not raised in a motion for judgment of acquittal.

We first note that although "[c]ounsel for Schlitter did not challenge the sufficiency of the evidence to support any of the alternative theories of guilt for a finding of child endangerment," Parmer's defense counsel argued there was

---

[3] Effective July 1, 2019, Iowa Code section 814.28 provides "an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented . . . is sufficient to sustain the verdict on at least one count." 2019 Iowa Acts ch. 140, § 32. This section was not in effect at the time of Parmer's or Schlitter's criminal trials.

insufficient evidence to show Parmer committed each of the four alternative ways of committing child endangerment. *See id.* at 389. For the intentional act alternative, defense counsel argued, "the evidence at best to the State and at worst to Ms. Parmer shows that Ms. Parmer was merely present when [Schlitter] physically abused [K.S]." Defense counsel also argued Parmer did not have custody and control of K.S. during the entire timeline of when the injuries could have occurred and stated, "So on that basis, all the child endangerment prongs should be directed out." The district court denied the motion for judgment of acquittal, finding there was sufficient evidence to generate a jury question on "whether [Parmer is] guilty of anything in connection with the different prongs of the child endangerment statute."

We determine Parmer cannot show she received ineffective assistance based on her claim that defense counsel failed to raise the issue of whether the State presented sufficient evidence that she "either committed an act resulting in the injury or had sole care of K.S. during the time in which the injury occurred." *See id.* at 390. We also determine that even if Parmer showed defense counsel did not adequately raise the issue so that counsel breached an essential duty, she cannot show she was prejudiced. If the issue had been argued more vigorously, the district court still would have denied Parmer's motion for judgment of acquittal as there was sufficient evidence to show Parmer was the person who inflicted injuries on K.S.

In Parmer's direct appeal, the Iowa Court of Appeals stated, "The overwhelming evidence produced at trial was that the child was repeatedly physically abused, which ultimately led to her death." *Parmer*, 2015 WL 2393652,

at *8. Evidence was also presented to show Parmer was the person who committed the abuse. Parmer took care of the seventeen-month-old child alone during the evening on March 21, 2020, while Schlitter attended a class. She gave the child a bath and stated she did not notice any bruises on the child. Medical evidence, however, showed there was extensive bruising on the child's body and "those bruises were different colors suggesting the bruises were caused at different times." *Id.* The coloring on some of the bruises "evidenc[ed] 'relatively deeper bruises' caused by 'significant force.'" *Id.* Parmer's denials about the bruises raise questions concerning her credibility about her care of the child.

Later on March 21, Parmer called 911 because the child was unresponsive. Doctors determined the child "sustained extensive critical, non-accidental injuries" that were ultimately fatal. *Id.* at *1. Medical evidence showed the child received a traumatic brain injury resulting in death close in time before the child received medical treatment.[4] The child was in Parmer's care during this period of time.

Additionally, following the child's death, Parmer told a friend, Heather Myers, "I might have killed a kid." Myers testified Parmer was crying and emotional during their conversation. For a period of time Parmer was involved in a romantic relationship with Timothy Sprous. Sprous testified to an occasion when Parmer began crying and told him that he should not get involved with her "because she was going to be convicted or go away because she took the life of an eighteen-

---

[4] Doctors testified the traumatic brain injury resulting in death occurred between twenty-four to zero hours before medical treatment was received. One doctor stated the injury occurred at a maximum six hours before treatment.

month-old child." Sprous asked how and Parmer "said something about head trauma and that was it."

In the direct appeal, the Iowa Court of Appeal stated,

> The child's last injuries occurred during times the child was in [Parmer's] care. Moreover, Parmer expressed anger towards the child to others, and two witnesses testified she confessed to them that she killed the child. The jury was free to accept or reject Parmer's testimony, as well as other witnesses' testimony. Clearly it did not find Parmer credible, though it did determine she committed an offense lesser than murder. Based on our review of the evidence in the record, we conclude the district court properly denied Parmer's motion for judgment of acquittal because substantial evidence supports both of her convictions.

*Id.* at *10.

We conclude that even if defense counsel made a more fulsome argument in the motion for judgment of acquittal concerning the intentional act alternative of committing child endangerment, the district court would have denied the motion. There is substantial evidence in the record to show Parmer is the person who physically abused the child, resulting in the child's death. The evidence of Schlitter's involvement in the child's injuries is not the same as the evidence of Parmer's involvement in the child's injuries, so the supreme court's determination that Schlitter could not be convicted on the intentional act alternative does not lead to the conclusion that Parmer could not be convicted on this theory.

We determine Parmer has not shown she received ineffective assistance from defense counsel.

**B.** Parmer asserts that she received ineffective assistance from her counsel for her direct appeal. She states her appellate counsel should have challenged the sufficiency of the evidence to support the intentional act theory of

child endangerment. Parmer claims that if the issue had been raised in her direct appeal, her conviction would have been overturned and the case remanded for a new trial, as in *Schlitter*. *See* 881 N.W.2d at 391.

In discussing Parmer's claims of ineffective assistance by defense counsel, we found there was sufficient evidence to support a conviction on the intentional act theory of child endangerment. If the issue had been raised in Parmer's direct appeal, it would have been unsuccessful. Counsel is not ineffective for failing to raise a meritless issue. *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018) ("Failure to raise a meritless issue does not establish counsel's performance was deficient."). Parmer has not shown she was prejudiced by appellate counsel's performance and, therefore, has failed to show she received ineffective assistance of counsel. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (noting both ineffective assistance and prejudice must be proven to establish a claim of ineffective assistance of counsel).

We affirm the district court's decision summarily disposing of Parmer's PCR application.

**AFFIRMED.**