# IN THE COURT OF APPEALS OF IOWA

No. 21-1719
Filed August 9, 2023

**STEPHEN ALLEN BOEDING,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

Applicant appeals the district court decision denying his request for postconviction relief concerning his previous conviction for first-degree murder. **AFFIRMED.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Stephen Boeding appeals the district court decision denying his request for postconviction relief (PCR) for his first-degree murder conviction. Boeding has not shown he received ineffective assistance based on his claims that defense counsel should have (1) filed an insanity defense, (2) called his wife, Angela Boeding, as a witness, and (3) requested an instruction on spoliation because a DVD of a police interview with Angela was destroyed. Also, he has not shown he received ineffective assistance from appellate counsel during his direct appeal. We affirm the district court's denial of Boeding's PCR application.

## I.      Background Facts & Proceedings

Boeding was friends with Kevin O'Connell, whom he met in a substance-abuse program. There was evidence they were intermittent sexual partners. After an evening of drinking alcohol at O'Connell's apartment, Boeding strangled O'Connell, causing his death. O'Connell's decomposing body was later discovered by O'Connell's landlord.

Months passed. Boeding then told his father-in-law, Laurence Weimer Sr. that he passed out from drinking at O'Connell's apartment and when he woke up O'Connell was attempting to penetrate his anus without consent. He stated he choked O'Connell, blacked out, then choked O'Connell harder to make sure he was dead. Weimer informed police officers of this conversation. When officers questioned Boeding he admitted grabbing O'Connell by the throat but stated he then blacked out.

Boeding was charged with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2(1) (2013). He waived his right to a jury trial and

agreed to a bench trial. At trial, Boeding asserted defenses of diminished responsibility and justification.

On Boeding's defense of diminished responsibility the district court found:

> Boeding later met with Dr. Kirk Witherspoon, a psychologist who is licensed in Illinois and Iowa. Boeding admitted to Dr. Witherspoon that he might have killed O'Connell because when he woke up O'Connell was dead and his hands were near O'Connell's throat. Boeding said nothing about anal intercourse or attempted anal intercourse to Dr. Witherspoon. Dr. Witherspoon opined that Boeding was not able to form the specific intent to kill. Dr. Witherspoon believes Boeding has a somnambulism/ automatism/sleepwalking defense.
> Boeding was also evaluated by Dr. Michael Taylor. Dr. Taylor is a licensed psychiatrist. Boeding did not tell Dr. Taylor that he was acting in self defense. Dr. Taylor interpreted Boeding's comments to him as Boeding was angry to find O'Connell on top of him trying to have anal intercourse. Dr. Taylor opined that Boeding was able to deliberate, premeditate and form the specific intent to kill.

The court determined there was insufficient evidence of diminished responsibility. The court found Boeding was not completely open and honest with Dr. Witherspoon and this affected Dr. Witherspoon's opinions. Also, "[t]he same would hold true for any testimony Dr. Witherspoon related to insanity or sleep-walking defenses."

Boeding also raised a defense of justification. The district court rejected this defense, finding

> [T]here is no evidence that it was necessary for Boeding to use deadly force against O'Connell in order to stop the action [of alleged sexual assault]. To the contrary, Boeding himself admits that he had choked O'Connell to the point where O'Connell was incapacitated with the exception that his eyes were moving. Boeding's decision to grasp him harder, choke him harder, and to ultimately kill him was not a reasonable use of force.

Boeding was convicted of first-degree murder and received a life sentence. The conviction was affirmed on appeal. *State v. Boeding*, No. 14-2023, 2016 WL 1130285, at *4 (Iowa Ct. App. Mar. 23, 2016).

On June 20, 2016, Boeding filed a PCR application, alleging he received ineffective assistance of counsel. Boeding asserted that he received ineffective assistance because defense counsel should have (1) filed an insanity defense, (2) called his wife, Angela, as a witness, and (3) requested a *Brady*-spoliation instruction because a DVD of a police interview with Angela was destroyed.[1] He later added a claim that he received ineffective assistance because appellate counsel did not raise the *Brady*-instruction claim on direct appeal.

The district court denied Boeding's PCR application. The court noted defense counsel testified Boeding was not insane. Also, defense counsel believed an insanity defense had little chance of success. The court concluded an insanity defense would not succeed, finding "[b]ased on the testimony of [Drs.] Taylor and Witherspoon it is clear that Boeding could form the requisite mens rea and understood right from wrong." On Boeding's claim that Angela should have been called as a witness, the court found Boeding had confessed to her that he killed O'Connell and it would have been a dangerous tactical decision to call her to the stand. In denying Boeding's *Brady* claim, the court found there was no evidence, other than Boeding's testimony, that the DVD of Angela's conversation with the police was erased. A police officer testified the interview with Angela was recorded

---

[1] Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution's suppression of evidence favorable to the defendant is a violation of the defendant's due process rights.

and placed into evidence, where it remained.  Boeding now appeals the district court's denial of his PCR application.

## II.    Standard of Review

We review de novo claims of ineffective assistance of counsel.  *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).  To establish a claim of ineffective assistance of counsel, an applicant must prove: (1) counsel failed to perform an essential duty and (2) the failure resulted in prejudice.  *State v. El-Amin*, 952 N.W.2d 134, 138 (Iowa 2020).  "We presume counsel performed his or her duties competently and 'measure counsel's performance against the standard of a reasonably competent practitioner.'"  *State v. Warren*, 955 N.W.2d 848, 858 (Iowa 2021) (citation omitted).  For the prejudice prong, a party must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020).

## III.    Insanity Defense

Boeding contends he received ineffective assistance because defense counsel did not raise an insanity defense.  Section 701.4 provides:

> If the defense of insanity is raised, the defendant must prove by a preponderance of the evidence that the defendant at the time of the crime suffered from such a deranged condition of the mind as to render the defendant incapable of knowing the nature and quality of the act the defendant was committing or was incapable of distinguishing between right and wrong in relation to the act.

The defense expert, Dr. Witherspoon, gave the opinion:

> Mr. Boeding's description of events transpiring which eventuated in the death of his friend suggest that he lacked specific capacity to form intent to commit a crime, and was not able to

distinguish between right and wrong in relation to his criminality, and therefore meets the tests for diminished responsibility and "insanity."

He stated, "It is recommended that Mr. Boeding be regarded as having experienced a parasomnic somnambulistic state at the time of his friend's death such that any sleepwalking-related conduct be regarded as unconscious and not that for which he might be reasonably held criminally accountable."

At the PCR hearing, defense counsel was questioned:

> Q. Do you believe Mr. Boeding's case would have been appropriate for an insanity defense?  A. No.
> Q. And why not?  A. Because he wasn't insane.  I've never— I don't—I think the odds are infinity to zero in terms of winning cases for an insanity defense.
> Q. You're saying in your experience you would have a minimal chance of success?  A. Exactly.  I thought I had a better chance of success with the diminished responsibility than I ended up with, but—

Defense counsel made the strategic decision to present a defense of diminished responsibility rather than a defense of insanity.  Dr. Witherspoon's opinion supported both defenses but defense counsel believed a defense of diminished responsibility held a greater chance of success than a defense of insanity.  "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel."  *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001).  In general, strategic decisions made after a thorough investigation of the law and facts are "virtually unchallengeable."  *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010).  Defense counsel did not breach an essential duty by reaching the strategic decision to present a defense of diminished responsibility rather than a defense of insanity, which he believed had very little chance of success.

In addition, Boeding has not shown he was prejudiced by defense counsel's decision. The court determined Boeding did not establish his defense of diminished responsibility. The court stated that Dr. Witherspoon's testimony did not support a defense of insanity or sleep walking. We conclude the record does not support a finding that a defense of insanity would have succeeded. Boeding has not shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Boothby*, 951 N.W.2d at 863.

### IV. Spouse as Witness

Boeding contends defense counsel was ineffective because Boeding's spouse, Angela, was not called as a witness. At the PCR hearing, Boeding stated that Angela would have been able to testify to his state of mind after the offense. He stated that he confessed to Angela immediately after the crime. He stated that he told Angela:

> And I don't know how long I slept for, but when I woke up, Kevin O'Connell was on top of me, but all I could feel was this pressure pushing me into the bed. And it was dark in the room. So I tried to turn one way, and it clinches down on me, so I'm going to try to roll out of this and try to defend myself, and I do that, and as soon as I do, I black out. And when I come to, my hands are around Kevin O'Connell's neck.

The district court ruled:

> Boeding testified that he believed [defense counsel] should have called Angela as a witness because she would have been able to testify to his state of mind after the crime. The Court would note that this testimony would not only be of arguably limited relevance, it would also be possibly dangerous as a tactical decision. Boeding did not indicate that he had made any exculpatory statements to Angela, and it is established that, in fact, he confessed to her that he had killed O'Connell.

We conclude defense counsel made a reasonable strategic decision not to call Angela as a witness. *See Ledezma*, 626 N.W.2d at 143 (noting a successful claim of ineffective assistance of counsel is generally not based on miscalculated trial strategies). Boeding has not presented evidence to show Angela's testimony would have helped his defense. To the contrary, Angela's testimony could be used to further incriminate Boeding as he confessed to her shortly after the commission of the offense. Additionally, Boeding cannot show he was prejudiced by defense counsel's decision not to call Angela to the stand as it is very unlikely the result of the trial would have been different if she had testified to Boeding's statements to her about the commission of the offense. Boeding's statements to Angela were consistent with the information he provided to the psychiatrists, rendering Angela's testimony duplicative.

**V.** ***Brady* Claims**

**A.** Boeding claims a DVD of Angela's interview with the police was destroyed. He stated that he attempted to watch the DVD and there was a statement, "This is Angie," and then it was "just white snow." Boeding also testified that a paper transcript of the DVD contained only the statement, "This is Angie."

The United States Supreme Court has stated, "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In order to establish a *Brady* violation, a party "must prove (1) the prosecution suppressed evidence, (2) the evidence was favorable to his defense,

and (3) the evidence was material to the issue of guilt." *Mark v. State*, 568 N.W.2d 820, 822 (Iowa Ct. App. 1997).

Boeding asserts that he received ineffective assistance because defense counsel did not request an instruction on spoliation under *Brady*. *See State v. Ennenga*, No. 14-1579, 2015 WL 9450656, at *3 (Iowa Ct. App. Dec. 23, 2015) ("If there has been a *Brady* violation, the remedy is a spoliation jury instruction.").

The district court found Boeding did not show the DVD had been destroyed. A police officer testified the recording of the interview with Angela was placed in evidence at the police station and was still there. There is no *Brady* violation if evidence has not been suppressed. *See id.* The court also found Boeding did not show the DVD would have been beneficial to his defense. *See id.* The court pointed out "Angela was not called as a witness at the PCR trial and there is no indication of how her testimony might have exonerated him, other than Boeding's contention that it would have shown his state of mind." Furthermore, Boeding did not show the evidence was material. *See id.*

We conclude Boeding failed to show there was a *Brady* violation. As there is a lack of evidence of a *Brady* violation, Boeding has not shown he received ineffective assistance because of defense counsel's failure to request a *Brady* instruction. Moreover, Boeding has not shown he was prejudiced by defense counsel's failure to request such an instruction.

**B.** Boeding also claims he received ineffective assistance because appellate counsel did not raise this *Brady* violation claim in the direct appeal. Although the State raises legitimate concerns regarding error preservation, including the lack of a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) to

obtain a ruling on this sub-issue, we elect to resolve this claim on the merits. For the same reasons we concluded Boeding has not shown he received ineffective assistance from defense counsel on this issue, we conclude he has not shown he received ineffective assistance from appellate counsel. Because Boeding presented no evidence to support his assertion that the State tampered with the DVD of Angela's interview and no evidence that Angela's interview was exculpatory, appellate counsel had no duty to raise the issue. We determine Boeding has not shown he received ineffective assistance from appellate counsel.

We affirm the district court decision denying Boeding's PCR application.

**AFFIRMED.**