# IN THE COURT OF APPEALS OF IOWA

No. 23-1449
Filed October 30, 2024

**JON ARTHUR DIECKMANN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, Judge.

An applicant appeals the denial of his postconviction-relief action claiming ineffective assistance of counsel. **AFFIRMED.**

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered by Tabor, C.J., and Greer and Schumacher, JJ.

**TABOR, Chief Judge.**

A jury found Jon Dieckmann guilty of attempted burglary in the second degree and possession of burglar's tools. The district court sentenced him to concurrent terms of imprisonment not to exceed five years. We affirmed his convictions and sentences on direct appeal. *See State v. Dieckmann*, No. 17-1806, 2018 WL 6120244 (Iowa Ct. App. Nov. 21, 2018), *aff'd in part*, 2019 WL 1868208 (Iowa Apr. 26, 2019) (per curiam). In this appeal from the denial of postconviction relief (PCR), he contends that his trial counsel was ineffective in four ways: (1) by not introducing evidence that he purchased business cards to show he was soliciting jobs as a handyman; (2) by not moving for mistrial after the homeowner testified to inadmissible hearsay; (3) by not objecting to the marshaling instruction for attempted burglary in the second degree; and (4) through cumulative error. After our de novo review, we find that denial of relief was proper on all four claims.[1] So, we affirm.

## I.    Facts and Prior Proceedings

We summarized the facts in Dieckmann's direct appeal:

> On May 15, 2017, Brenda Milam was alone at home with her dog. Her property has a paved walkway leading from the sidewalk to her front door and around the north side of her house. Her property also has a privacy fence that encloses the backyard and abuts the north and south sides of the house. Her fence has gates along the north and south sides that latch from the backyard side. She has "BEWARE OF THE DOG" signs on both gates and the front of her house. For the past four years, her front door has had a sign that says, "Doorbell broke. Please knock." She has a three-season room attached to the rear of her house, with an exterior door secured by an interior hook latch.

---

[1] We ordinarily review PCR rulings for correction of legal error; but when the applicant alleges ineffective assistance of counsel, we review de novo. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018).

Milam, who was not feeling well, decided to rest on her living room couch and watch television. Shortly after 9:00 a.m., she heard a knock at her front door. Her dog barked at the door, but she decided to ignore it and remained on the couch. Her dog continued barking and growling as it made its way towards the rear of the house. She became alarmed and went to the three-season room, where she saw a man trying to open the exterior door. She could not see "if there was something in his hand, but his hands were pushing on [the] door with the other hand towards the latch." She screamed at him, and he apologized and walked around the south side of the house to the front. He closed the south fence gate behind him, reaching over the gate to latch it shut, and rode away on a bicycle. Milam immediately called the police to report the incident. While talking to the police, she watched the man approach another house before riding out of view.

At or about 9:14 a.m., Sergeant Andrew Waggoner with the Davenport Police Department responded to Milam's call. Sergeant Waggoner quickly found Dieckmann in the location Milam indicated. Dieckmann "was literally an exact match of" the description Milam provided, including riding a bicycle, wearing no shirt, and carrying a large backpack. He stopped Dieckmann, and Dieckmann explained he was in the neighborhood looking for odd jobs such as lawn mowing and maintenance. He claimed he had just knocked on Milam's front door, noticed a sign telling him to go to the back door, and walked around to the back. When he knocked on the back door, a woman in the house screamed at him so he apologized and left. Officers found several items inside Dieckmann's backpack, including a long metal file, hammer, and work gloves. Sergeant Waggoner testified these items can be used for burglary.

On June 14, the State filed a trial information charging Dieckmann with burglary in the second degree and possession of burglar's tools. From August 21 to 23, a trial was held. Dieckmann presented testimony from two Davenport residents, who had hired him to perform odd jobs and were satisfied with his work, and testimony from his mother's boyfriend, who said Dieckmann had been working odd jobs and he had loaned Dieckmann the metal file and other tools inside the backpack. The jury found Dieckmann guilty of attempted burglary in the second degree and possession of burglar's tools.

*Dieckmann*, 2018 WL 6120244, at \*1–2 (alteration in original).

In that appeal, Dieckmann argued "his counsel was ineffective for failing to (1) challenge the sufficiency of the evidence; (2) object to the marshalling instruction for attempted burglary in the second degree; (3) object to improper and

inadmissible evidence; and (4) move for mistrial after the jury heard improper evidence." *Id.* at *2. He also argued that "the cumulative effect of these errors resulted in prejudice." *Id.* We found that sufficient evidence supported his convictions, so his counsel was not ineffective for skipping that challenge. *Id.* at *4. We preserved his other ineffective-assistance claims for PCR proceedings. *Id.*

Dieckmann applied for PCR in June 2019, reprising his ineffective-assistance claims. At the PCR hearing, the district court heard testimony from Dieckmann and his trial counsel. The district court denied relief in August 2023. Dieckmann appeals.

## II.     Analysis

We analyze ineffective-assistance claims under a two-prong test. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Dieckmann must show by a preponderance of the evidence: (1) that his counsel failed to perform an essential duty and (2) that the failure resulted in prejudice. *See id.* If Dieckmann fails to prove either prong, we need not address the other. *See id.*

To establish the first prong, Dieckmann must prove that his counsel "performed below the standard demanded of a reasonably competent attorney." *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). To establish prejudice, Dieckmann must prove that but for his counsel's unprofessional errors, there was a reasonable probability of a different outcome. *See id.* at 143. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). We examine each of Dieckman's four claims in turn.

### A. Business Card Evidence

First, Dieckmann argues that his trial counsel breached an essential duty by failing to investigate and introduce evidence supporting his defense that he was a handyman looking for odd jobs, not a burglar. At the PCR trial, Dieckmann testified that he purchased business cards and a website domain for his handyman business online before he went to Milam's home. He also testified that he gave his counsel an emailed receipt for the business card purchase on the first day of trial, but she never offered it into evidence.[2] Dieckmann contends that evidence of that purchase would have corroborated his defense theory. Thus, he claims he was prejudiced by counsel's failure to obtain and introduce the evidence at trial.

At the PCR trial, Dieckmann's counsel testified that "he was supposed to get me a business card or paperwork verifying that he had them on order," but that she didn't remember receiving them. She also stated that she "definitely would have submitted it if I had it," and she "thought that would be good evidence."

The State argues that Dieckmann failed to prove he gave counsel documentation of the business card purchase or that counsel should have obtained the evidence herself. It also contends Dieckmann failed to show how the evidence would have been admissible because the documents showing the

---

[2] The district court admitted the emailed receipt as Exhibit 1 at the PCR trial. The receipt lists "Intuit QuickBooks Online—Free Trial," "Local Listings," and "Standard Websites." It does not list any business cards. Dieckmann also cites two additional exhibits in his briefs: a mock-up of the business cards (Exhibit 2) and a Vistaprint order summary for 500 business cards (Exhibit 3). The State contests error preservation for Exhibits 2 and 3. The district court agreed to leave the record open after the PCR trial for Dieckmann's PCR counsel to submit those exhibits. But our record does not reflect that they were admitted, and the court did not reference them in its PCR ruling.

purchase were hearsay.[3]  *See* Iowa Rs. Evid. 5.801, 5.802.  Finally, the State asserts that Dieckmann failed to prove prejudice because his counsel offered the testimony of two residents who had hired Dieckmann to do odd jobs, as well as the testimony of his mother's boyfriend, who said he loaned Dieckmann the tools found in his backpack for his handyman work.  Thus, according to the State, Dieckmann's trial counsel performed competently.  Yet the jury rejected his defense because the State presented strong evidence supporting its burglary case.

True, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  But "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*  Dieckmann's counsel testified that she knew about the business card evidence but believed Dieckmann or his mother planned to supply the exhibits to her.  Based on her testimony—and Dieckmann's testimony that he *did* give counsel the evidence—counsel had no duty to pursue the evidence herself.  *See Ledezma*, 626 N.W.2d at 145 (stating that "investigation of a defense may be curtailed or eliminated if the facts are already known to counsel through another source.").

Even if Dieckmann's counsel did breach an essential duty by not introducing the business card evidence, Dieckmann failed to prove he suffered prejudice as a result.  "When the performance of counsel relates to the failure to present

---

[3] In his reply brief, Dieckmann claims the documents would have been admissible under the business records exception to the hearsay rule.  *See* Iowa R. Evid. 5.803(6).

evidence, we must consider what bearing the evidence may have had on the outcome of the case." *Id.* at 148. The business card evidence may have corroborated the testimony of the defense witnesses. But it is unclear how counsel could have introduced it at trial without calling Dieckmann to testify.[4] *See* Iowa R. Evid. 5.901. Moreover, the State's evidence supporting Dieckmann's convictions was substantial. *See Dieckmann*, 2018 WL 6120244, at *3–4; *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Thus, Dieckmann failed to prove there was a reasonable probability of a different outcome had his counsel sought to introduce the business card evidence at trial.

## B. Motion for Mistrial

Second, Dieckmann argues that counsel was ineffective by not moving for mistrial after Milam, the homeowner, testified to inadmissible hearsay. When asked why she thought Dieckmann apologized after she screamed at him, Milam answered:

> Just his actions leading up to that point. . . . I don't know why he apologized. I mean, what are you sorry for, because you're still going to do it. I mean, if I wasn't home, you still would have entered. After all this, there was some Public Works guys working on our street, and they said that they watched him do that to, like, three or four houses.

---

[4] Dieckmann chose not to testify for fear of being impeached with his prior burglary conviction. Counsel testified that she did not think she could have laid a foundation to introduce the emailed receipt without Dieckmann's testimony.

Dieckmann's counsel objected.[5]  The district court sustained the objection and instructed the jury to disregard that answer.

At the PCR trial, Dieckmann's counsel testified that she did not move for mistrial because

> when [Milam] stated the Public Works guy said he had done it to other houses, I thought . . . that bolsters our defense, actually. Because if [Dieckmann] was knocking on other doors, that's what he said he was doing, going around the neighborhood looking for work. So while it was hearsay, I didn't think it was that bad. I thought it kind of worked for us.

She continued:

> I objected because I heard hearsay, but I didn't ask for a new trial because I thought that the more they said he was walking around knocking on doors, this wasn't at night, he wasn't . . . lurking around, he was openly . . . knocking on doors asking if they had any work he could do, so I thought the more we both heard that, the better.

Dieckmann contends that "[t]he implication of [Milam's] hearsay testimony was that [he] was committing a string of burglaries."  He also claims that, on top of the hearsay, Milam's testimony referred to prior bad acts and its probative value was substantially outweighed by the danger of unfair prejudice.  *See* Iowa Rs. Evid. 5.403, 5.404.  Thus, Dieckmann contends that he was prejudiced by counsel's failure to move for mistrial.

The State counters that Dieckmann cannot prove breach of an essential duty because his counsel made a "virtually unchallengeable" strategic decision not to seek a mistrial.  *See Ledezma*, 626 N.W.2d at 143 (citation omitted).  The State also argues that Dieckmann cannot prove prejudice because the district court struck the testimony, and it was ambiguous.  *See State v. Plain*, 898 N.W.2d 801,

---

[5] Counsel did not state the basis for the objection on the trial record.

815 (Iowa 2017) (stating that district courts generally have "broad deference" to grant "a cautionary limiting instruction rather than a mistrial" after the jury hears inadmissible evidence, and "[c]autionary instructions are sufficient to mitigate" prejudice "in all but the most extreme cases" (citation omitted)); *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012) ("Jurors are presumed to follow instructions."); *State v. Newell*, 710 N.W.2d 6, 32–33 (Iowa 2006) (holding that district court did not abuse its discretion by denying mistrial motion after witness's "solitary reference to drug charges").

We agree that Dieckmann did not prove his counsel was ineffective for failing to move for mistrial after Milam's testimony. Counsel acted as a reasonably competent attorney by immediately objecting. She had no duty to make a meritless motion for mistrial after the district court properly sustained the objection and instructed the jury to disregard the inadmissible testimony. *See State v. Brown*, 930 N.W.2d 840, 855–56 (Iowa 2019) (finding counsel was not ineffective for failing to raise an issue without merit). And as counsel explained at the PCR trial, she made a strategic decision not to move for mistrial because, while the hearsay statement was inadmissible, she believed it bolstered Dieckmann's defense. That strategic decision was not a breach of duty. *See Ledezma*, 626 N.W.2d at 143 ("Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel.").

## C. Objection to Attempted Burglary Instruction

Third, Dieckmann argues that counsel should have objected to the marshaling instruction for attempted burglary in the second degree. According to that instruction, for the jury to find Dieckmann guilty, the State had to prove:

1. On or about the 15th day of May, 2017, [Dieckmann] attempted to break or enter into a residence . . . .
2. The house was an occupied structure . . . .
3. [Dieckmann] did not have permission or authority to attempt to break or enter into the house.
4. [Dieckmann] did so *with the specific intent to commit a theft, assault or other felony.*
5. One or more persons were present in or upon the occupied structure.

(Emphasis added.) Dieckmann's argument centers on the fourth element, which included three alternative specific intents—to commit a theft, assault, or other felony. He claims no evidence supported a theory that he had the intent to commit an assault or other felony, and it was unclear which alternative the jury relied on for its verdict. Thus, Dieckmann maintains that because there was not sufficient evidence for all three theories, reversal is required.[6] *See State v. Tyler*, 873 N.W.2d 741, 753–54 (Iowa 2016); *State v. Schlitter*, 881 N.W.2d 380, 391 (Iowa 2016), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189 (Iowa 2022).[7] And because his counsel failed to object to the instruction, he contends he is entitled to a new trial.

---

[6] As the State points out, the standard in these cases for direct review of general verdicts has been superseded by statute. *See* Iowa Code § 814.28 (2019) (stating that "an appellate court shall not set aside or reverse" a general verdict "on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.").

[7] In *Schlitter*, our supreme court found on direct appeal that the defendant's trial counsel failed to perform an essential duty by failing to object to the submission of a jury instruction including an unsupported theory of guilt. *See* 881 N.W.2d at 391. The court also found that the defendant suffered prejudice because it was "not possible to know whether or not the jury relied on this alternative in reaching its verdict." *Id.* Accordingly, the defendant was entitled to a new trial based on ineffective assistance of counsel. *Id.*

When asked at the PCR trial why she did not object to the marshaling instruction, Dieckmann's trial counsel testified:

> I believe that's the correct definition . . . I think the judge gave us those instructions and we had a day or two before trial to go over it. When I looked at the definition of burglary and attempted burglary, I didn't see anything different. So, I guess, you know, that's one of those things that at the time if I had thought of it, but I thought it was common sense about specific intent, and I believe I spoke a lot about intent in my closing, about there was nothing that showed intent to burglarize.

Later in her testimony, counsel agreed that the instruction and the basis for the jury's verdict were unclear. She explained, "[I]n retrospect, I would have asked for it to be more specific, but when I read over it prior, I didn't think of that."

The State concedes that Dieckmann "is right that the intent element for attempted burglary should target the specific crime that the evidence showed he intended to commit upon entering a dwelling." Thus, it agrees that Dieckmann's counsel "probably should have objected to that instruction." *See State v. Mesch*, 574 N.W.2d 10, 14–15 (Iowa 1997) (holding district court's instruction that defendant tried to enter home "with the specific intent to commit a felony, assault, or theft"—without specifying felony—was reversible error). But the State argues that Dieckmann's ineffective-assistance claim must fail because he did not assert or prove *Strickland* prejudice.

We agree with Dieckmann that his counsel should have objected to the specific-intent element of the marshaling instruction for attempted burglary in the second degree. But the standard for establishing prejudice based on counsel's failure to object to improper jury instructions differs from the presumed-prejudice standard for preserved error in jury instructions. *See State v. Lorenzo Baltazar*,

935 N.W.2d 862, 871–72 (Iowa 2019). "[I]neffective-assistance-of-counsel claims based on failure to preserve error are not to be reviewed on the basis of whether the claimed error would have required reversal if it had been preserved at trial. Rather, a defendant must demonstrate a breach of an essential duty and prejudice." *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008) (internal citation omitted).

Even if we assume Dieckmann's counsel failed to perform an essential duty by failing to object to the instruction, we find no prejudice. *See id.* When the improper "jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results." *Id.* at 197. "Further, when there is no suggestion the instruction contradicts another instruction or misstates the law there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim." *Id.*

Dieckmann does not contend that the marshaling instruction misstated the law. And as the State points out, the instruction mirrored the statutory definition of attempted burglary.[8] *See* Iowa Code § 713.2 (2017). Moreover, Dieckmann cannot prove that there was a reasonable probability the jury convicted him on the theory that he intended to commit an "assault or other felony" because—as Dieckmann himself contends—the State presented no evidence to support those

---

[8] The PCR court also noted in its ruling that the instruction was "directly in line with the Iowa [State] Bar Association's suggested criminal jury instructions."

alternatives.[9]  Thus, we reject Dieckmann's ineffective-assistance claim based on his counsel's failure to object to the marshaling instruction.

### D. Cumulative Error

Lastly, Dieckmann argues that he was prejudiced by the cumulative effect of counsel's errors.[10]  He contends that "[i]n a case this close, there is a reasonable probability that the verdict would have been different but for counsel's errors."

When an applicant raises several claims of ineffective assistance, "we should look to the cumulative effect of counsel's errors to determine whether the [applicant] satisfied the prejudice prong of the *Strickland* test."  *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012).  If we find that counsel failed to perform an essential duty, and that single failure meets the prejudice prong, we should consider counsel ineffective.  *Id.* at 501.  If we analyze the prejudice prong for each claim without considering counsel's failure to perform an essential duty, we "can only dismiss the postconviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice."  *Id.* at 501–02.

As discussed above, Dieckmann's counsel did not breach an essential duty by not introducing the business card evidence nor by choosing not to seek a mistrial after Milam testified to hearsay.  And even assuming counsel breached an essential duty by not objecting to the marshaling instruction for attempted burglary,

---

[9] In its ruling on Dieckmann's motion for judgment of acquittal, the district court found that the jury could reasonably conclude Dieckmann had the specific intent to commit a theft.  The State argued in closing that the jury must find that Dieckmann had "the specific intent to commit a theft, assault, or other felony," but did not specify which of the three alternatives its evidence supported.

[10] The State contests error preservation on this claim because the PCR court did not rule on it.  We choose to bypass any error preservation problem.

Dieckmann failed to prove he suffered *Strickland* prejudice.  Thus, Dieckmann was not prejudiced by the cumulative effect of counsel's errors.

**AFFIRMED.**